**People of the State of Illinois, Plaintiff-Appellee, v. Lino Gonzales and Oscar Mata, Defendants-Appellants.**

Gen. Nos. 69–205, 69–206. (Consolidated.)

Second District.

July 2, 1970.

See Callaghan's Illinois Digest, same topic and section number.

226

227

Eugene G. Griffin, of Aurora, for appellants.

William Ketcham, State's Attorney of Kane County, of Geneva, and W. Ben Morgan, of Elgin, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendants appeal from judgments of conviction for the unlawful sale of narcotics, based upon a jury verdict rendered in a trial consolidated by stipulation. Each defendant was sentenced to not less than ten nor more than eleven years in the penitentiary.

The principal issue raised is a claim of entrapment. (Ill Rev Stats 1967, c 38, § 7–12.) Defendants also claim error in the failure to afford them a preliminary hearing; in the refusal of a tendered instruction bearing on the effect of the failure of the State to call an informer as a witness; and in the denial of a motion for a new trial based upon alleged newly discovered evidence.

The fact of sale of marijuana by defendants on December 16th, 1968, is not disputed. The defense of entrapment is based upon claimed activities of one Nicholas Cadena, an informer in the service of the State.

From the testimony of defendants it was adduced that the defendant Oscar Mata had made a trip to Texas in July of 1968, and had there picked and returned with approximately six pounds of marijuana for the common supply of both defendants. From time to time, the defendants had smoked marijuana in the presence of each other, but had not given or permitted anyone else access to the supply.

Lino Gonzales testified that he and his wife customarily attended dances sponsored on behalf of a Spanish

228

speaking community in Aurora by Cadena. He stated that on these occasions Cadena would frequently approach defendants with inquiries about possible sources of marijuana available for sale. Defendants said that they did, on each of some three occasions, refuse to discuss the matter. In one instance Cadena allegedly gave Gonzales a marijuana cigarette to smoke. Mata testified that on one occasion he had been asked by Cadena to go to Texas to procure marijuana for him, but that he also refused.

Gonzales testified that on December 16th, 1968, without prearrangement, Cadena and one Kenneth Cloud, a government narcotics agent, drove to his home; that Cloud remained in the car and Cadena approached Gonzales to again discuss purchasing marijuana, and that he refused to enter into the discussion; that Cadena advised him that a "new car" and "money in your pocket" was available if he would consider engaging in marijuana sales. It appeared that Gonzales was a factory worker supporting himself, his wife and six children on $92 a week, and lived in a substandard dwelling. At this suggestion, on December 16th Gonzales proceeded to the car in which Cloud was waiting. While in the automobile, Cadena introduced Cloud as a narcotics peddler and allegedly advised defendant in Spanish that a "house and car" were available for him by trafficking in marijuana.

The three persons proceeded to defendant Mata's home. There Cadena offered to purchase the remainder of the supply for $80 a pound. Mata refused this offer, but Cadena made various counteroffers and a price was agreed upon. The defendants divided the money.

Cloud testified for the State. He related that he, with agents Jordan and Nolan, drove to Aurora on December 16th. The three met Cadena. They knew him as an informer who had given information to the State's Attorney. Only Jordan had seen Cadena before. Cadena was

229

not a government agent and received no compensation for services in the matter. They searched Cadena for money or marijuana, marked $600 in bills which the agents retained for the possible purchase of marijuana. Cloud drove an unmarked government car to the home of the defendant Gonzales with Cadena as his passenger; the other agents followed in another car. There Cadena went to Gonzales' residence and brought him out to the car. Cloud and Cadena were in the front seat, Gonzales in the rear. Cadena introduced Cloud to Gonzales and Cloud gave his name as "Chuck" and said he trafficked in marijuana for resale in Chicago and was interested in good marijuana for resale.

Cloud testified that Gonzales then responded, "Okay. First let's go see Oscar." The three drove to where Mata was working on his car. Gonzales called to Mata who then got in the back seat with him. The offer to purchase marijuana was made by Cloud to Mata. Mata left and returned from his home with a sample in an envelope which he gave to Cloud. The defendants talked to each other, partly in Spanish, partly in English, until they finally agreed on the price. Cloud admitted that he did not understand Spanish.

The defendants drove away in Mata's car and returned after a short interval and drove alongside Cloud, facing in the same direction. Through the open windows of the cars Gonzales handed Cloud a grocery bag containing the marijuana and Cloud handed Gonzales $400 in marked funds which Gonzales, in turn, handed to Mata. Cloud testified that he did not see the defendants thereafter until the trial.

Agents Jordan and Nolan testified to seeing the delivery of the marijuana and exchange of the money in corroboration of Cloud's testimony. Nolan testified that he followed defendants to a cafe and went in alone to observe them.

The testimony of defendants relating to the delivery of the marijuana and subsequent events conflicted with the State's testimony in numerous respects. Defendants testified that Cadena was driving his car and Cloud was the passenger; that Cadena turned over $500 before defendants drove away to get the marijuana; that Cadena had only the $400 and secured the additional $100 from Cloud; that they met Cloud later at a cafe and gave him back $160 because he complained of the quality of the marijuana. Defendant Mata testified that he drove alongside of the car in which Cadena was driving but in the opposite direction, and that he handed the grocery bag to Gonzales who handed it across to the other car, directly to Cloud in the passenger seat.

Defendants argue that the mere possession and use of narcotics by defendants without more did not constitute evidence of a predisposition to sell narcotics; therefore, that the origin of the sale was to be found in the persuasions and inducements offered by the informant Cadena and by the government agents. They urge that, having offered the affirmative defense of entrapment, the State then had the burden of proof and that it failed to negate the defense beyond a reasonable doubt. The failure to call the informer as a witness is suggested as a significant factor in the alleged failure of the State's proof.

The entrapment defense has been codified in general language in Ill Rev Stats 1967, c 38, § 7–12:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing

231

an offense in furtherance of a criminal purpose which such person has originated."

■ Where it appears that law officers or their agents have conceived and planned a criminal offense and have incited, induced, instigated or lured an accused into committing an offense, which he otherwise would not have committed and had no intention of committing, the defense is established. Entrapment is not available to one who has the intention and design to commit the criminal offense, and who does commit the essential acts constituting it, merely because a law officer or his agents, for the purpose of securing evidence, affords such person the opportunity to commit the act, or purposely aids and encourages a defendant in its perpetration. The People v. Hall, 25 Ill2d 297, 300, 185 NE2d 143 (1962); The People v. Outten, 13 Ill2d 21, 23, 147 NE2d 284 (1958); The People v. Wells, 25 Ill2d 146, 149, 182 NE2d 689 (1962). The law distinguishes between a trap for the unwary criminal and a trap set to ensnare the innocent and law-abiding into the commission of a crime. Sherman v. United States, 356 US 369 (1958); The People v. Outten, supra, at page 24. When the defense is invoked, predisposition and criminal design become relevant, (see The People v. Outten, supra, at page 25). But, although a defendant has no prior criminal record, this factor alone cannot overcome evidence of his ability and instant willingness to make the unlawful sale as soon as the opportunity to do so is presented. The People v. Gonzales, 25 Ill2d 235, 239, 184 NE2d 833 (1962).

■ On this record we conclude that the testimony of the witnesses for the State established beyond a reasonable doubt a willing sale, with no overbearing persuasion on the part of the agents, except the suggestion of what the purchase money could buy. The only reluctance displayed at the particular time of the admitted sale related to the price to be paid. This evidence showed that de-

232

fendants were ready to make the unlawful sale and had quick access to a substantial quantity of narcotics. This established the criminal design in the minds of the defendants resulting in the acceptance of the opportunity offered, thus negating the defense of entrapment. See People v. Hatch, 49 Ill App2d 177, 185, 186, 199 NE2d 81 (1964); People v. Brown, 95 Ill App2d 66, 70, 238 NE2d 102 (1968).

■ The jury was not required to believe the testimony of defendants relating to the previous conversations with Cadena, even under the doubtful assumption that this evidence of previous reluctance to commit the crime would be sufficient to create a reasonable doubt relative to the defense of entrapment. The issue being one of credibility was properly submitted to the jury. See The People v. Gonzales, supra, page 239. See also United States v. Aulet, 339 F2d 934, 936 (CA 7th 1965); United States v. Armstrong, 339 F2d 1015, 1017, 1018 (CA 7th 1964).

■ The fact that an informer, who was alleged to have induced an accused to commit the offense, is not called as a witness to rebut a defendant's testimony also raises an issue of credibility for the determination of the trier of the facts and does not establish an entrapment defense as a matter of law. United States v. Armstrong, supra, at page 1017; Masciale v. United States, 356 US 386, 388 (1958); United States v. Thomas, 351 F2d 538, 539 (CA 2nd 1965).

Defendant relies principally on The People v. Strong, 21 Ill2d 320, 172 NE2d 765 (1961); People v. Jones, 73 Ill App2d 55, 219 NE2d 12 (1966) and People v. Lewis, 80 Ill App2d 101, 224 NE2d 647 (1967) for the proposition that where crucial elements of the State's case depend upon the work of an informer, he must be called upon to controvert the testimony of the defendant intending to prove entrapment. The cases are distinguishable on the facts in that in both Strong and

Jones the holdings were based upon unrebutted testimony that the narcotics were supplied by informers acting as agents of the State. Lewis has no application on the facts.

The next contention of the defendants, that they were entitled to a preliminary hearing, is without merit under the circumstances of this case. This claim of error is based upon the provisions of Ill Rev Stats 1967, c 38, § 111–2, and relies also upon The People v. Petruso, 35 Ill2d 578, 221 NE2d 276 (1966) and The People v. Bonner, 37 Ill2d 553, 229 NE2d 527 (1967). However, Petruso holds that there is no constitutional or statutory right to a preliminary hearing, and establishes the rule that, in the absence of a showing of prejudice, a conviction will not be reversed for failure to afford a defendant a preliminary hearing. Bonner held that there is no constitutional right to a preliminary hearing and that it is not a critical stage in the proceedings, so that failure to appoint counsel at such hearing is not error except where the denial of counsel infects a subsequent trial with fundamental unfairness.

■ Here, the stipulated facts are that a preliminary hearing was set for February 28th, 1969, that a continuance of the date for the hearing until March 7th, 1969, was granted by the presiding Magistrate over defendants' objection, and that in the interval defendants were indicted. This is not a showing of prejudice nor of fundamental unfairness which could be said to have infected the trial.

■ The defendants were tried upon an indictment which contained full information concerning the crime charged, and a preliminary hearing under the circumstances of this case was not required nor necessary. The People v. Jones, 9 Ill2d 481, 482, 138 NE2d 522 (1956); People v. Rinks, 80 Ill App2d 152, 158, 224 NE2d 229 (1967).

Defendants also argue that the court committed reversible error in refusing an instruction tendered by them relating to the failure of the State to call the informer Cadena as a witness. The instruction as tendered read: "If the jury finds that NICK CADENA was available as a witness for the prosecution but not for the defendants, and is satisfied that diligent effort has not been made to find him by the prosecution, they may presume that the testimony of such witness would be against the prosecution."

██ ██ The State is not obligated to call every witness to crime, including an informer, but the unexplained failure to do so under some circumstances may give rise to an inference against the State. The People v. Strong, 21 Ill2d 320, 325, 172 NE2d 765 (1961) ; The People v. Aldridge, 19 Ill2d 176, 180, 166 NE2d 563 (1960) ; The People v. Jones, 30 Ill2d 186, 190, 195 NE2d 698 (1964). The People, however, may accept the risk of unexplained absence of a witness so long as the offense is otherwise proved. The People v. McElroy, 30 Ill2d 286, 290, 196 NE2d 651 (1964). An accused has the right, of course, to comment on the unexplained absence of a witness. The People v. Scott, 38 Ill2d 302, 306, 231 NE2d 441 (1967).

The particular form of the instruction tendered by the defendant was apparently based on a form which would be applicable to civil cases and which did not enunciate the rule set forth in the cited criminal cases. No evidence was presented in the record upon which the jury could determine the qualifications stated in the instruction. In closing argument, defendants' counsel argued extensively and without objection the unfavorable inference to be drawn from the State's failure to call Cadena as a witness.

██ Under this combination of facts there was no prejudice sufficient to require reversal in the refusal of the instruction.

The final claim of error based upon the denial of defendant Gonzales' motion for a new trial alleging newly discovered evidence, is also without merit. At the post-trial hearing, Gonzales stated that he had "blood on the brain" and "attacks." His wife testified that he was not the same after an automobile accident in 1965 which was some years prior to the trial and, in her opinion, due to the accident he could not fully understand the questions asked of him; that he has epilepsy and that the condition has affected his eyes. Mrs. Gonzales stated that she had not told the interpreter used in the trial, nor trial counsel, of this. Trial counsel stated that he did not learn of these circumstances until after the trial. The court examined the defendant and it was brought out that the defendant had held numerous jobs and had passed physical examinations for factory work in the intervening time. The court further noted that he had observed the defendant throughout the trial and had noticed no impairment of Gonzales' mental capacity.

The denial of the motion for a new trial was not in error, applying the standards set forth in The People v. Dukes, 19 Ill2d 532, 538, 539, 169 NE2d 84 (1960).

We find no reversible error in this case and affirm the judgments below.

Affirmed.

ABRAHAMSON and MORAN, JJ., concur.