No. 46,683

STATE OF KANSAS, *Appellee*, v. RANDY L. WILLIAMSON, *Appellant*.

(502 P. 2d 777)

Opinion filed November 4, 1972.

*Don W. Riley*, of Wichita, argued the cause, and *Frank A. Caro*, of Wichita, was with him on the brief for appellant.

*Wallace W. Underhill*, deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Keith Sanborn*, county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The appellant, Randy L. Williamson, was charged with possession of marijuana with the intent to sell the same. (K. S. A. 65-2501 [13], K. S. A. 1971 Supp. 65-2502 and 65-2519 [*a*].) Williamson was convicted by a jury and sentenced by the district court to confinement for a period of not less than one nor more than ten years.

State's witness, Steven Clark, received a telephone call at his residence in Wichita, Kansas, around 9:00 p. m. on March 28, 1971. The party calling identified himself as "Randy Williamson," and asked, "you remember me, don't you?" Clark, believing that he may have known the caller, responded, "Yes. How are you?" The caller then requested that Clark do him a "little favor." The favor was that the caller wanted "4,000 black beauties—black and reds."

Upon hearing the request for "black beauties," Clark recognized that the caller had contacted the wrong person. He then suggested to the caller that he might be able to secure the "black beauties" and asked for the caller's telephone number so that he might call him back. A telephone number was given and an address on North Fountain Street in Wichita. At the close of the conversation, the caller stated he had some marijuana if Clark might need some.

Clark immediately called the Wichita Police Department and his call was returned by Detective Gary Bolin. Clark related the conversation to Bolin who then made another telephone call to ascertain the current market price of "black beauties." Bolin then called Clark back and asked him to contact the caller, inform him the drugs were available at ten cents a capsule, and to make inquiry into the caller's willingness to barter for the drugs with the marijuana.

At approximately 10:00 p. m., one hour after the initial conversation, Clark called the number given and arrangements were made to complete the transaction at the intersection of Central, Oliver and Elm Streets in Wichita at 10:45 p. m. Clark quoted the price for "black beauties" at ten cents each and requested that the party identifying himself as Williamson "bring along" the marijuana. The

response was that the party had only "six lids" that night but he could obtain "two kilos" on the next day. Williamson told Clark he could recognize the party's car as a yellow 1967 Pontiac LeMans. Clark then called Bolin back and related the details of the second conversation to him.

Bolin, Detective Drowatsky, and an unidentified police officer then drove to the location of the designated transaction in separate cars and "staked out" the area. A few minutes after 10:30 p. m. a yellow 1967 Pontiac LeMans with three occupants entered a parking lot adjacent to the intersection where the transaction was to be consummated. Bolin observed the automobile for awhile and then as the car exited the parking lot, Bolin stopped it in the street. He approached the car, identified himself, and asked the driver, Rick Weymore, to return the automobile to the parking lot. The three occupants, Williamson, Weymore and James Copley, were directed to take seats in the back of the patrol car and as they were complying, Detective Drowatsky entered the parking lot.

Before going to Bolin's patrol car, Drowatsky approached the Pontiac, opened the door on the passenger side, and not sighting any contraband in plain view, closed the door and proceeded to the patrol car where the subjects were seated. Bolin, upon ascertaining that nothing was to be found by plain view, asked the driver, Weymore, for permission to search the Pontiac. Consent was given and Drowatsky, overhearing the conversation, proceeded to search the car. Shortly Drowatsky returned to the patrol car with a brown paper sack containing six plastic bags which he found under the front seat of the Pontiac. The contents of those bags subsequently was found to be marijuana. Bolin advised the appellant at that point that he was under arrest and informed him of his rights. Approximately two hours had passed from the time of the initial telephone call until the arrest.

The appellant contends the district court erred in admitting into evidence over his objection testimony concerning the telephone call received by Steven Clark. His theory is that the telephone call was inadmissible hearsay; the assumption being that there was insufficient evidence to establish the identity of the caller as the defendant.

The admissibility of the telephone conversations was of paramount importance; without evidence as to that conversation, the state would fail in its burden of proof—the element of intent to sell being absent.

Communications by telephone are admissible in evidence where they are relevant to the fact or facts in issue, and admissibility is governed by the same rules of evidence concerning face-to-face conversations except the party against whom the conversations are sought to be used must ordinarily be identified. It is not necessary that the witness be able, at the time of the conversation, to identify the person with whom the conversation was had, provided subsequently identification is proved by direct or circumstantial evidence somewhere in the development of the case. The mere statement of his identity by the party calling it not in itself sufficient proof of such identity, in the absence of corroborating circumstances so as to render the conversation admissible. However, circumstances preceding or following the conversation may serve to sufficiently identify the caller. The completeness of the identification goes to the weight of the evidence rather than its admissibility, and the responsibility lies in the first instance with the district court to determine within its sound discretion whether the threshold of admissibility has been met. (*State v. Kladis,* 172 Kan. 38, 238 P. 2d 522; *State v. Visco,* 183 Kan. 562, 567, 331 P. 2d 318; *Kansas Electric Supply Co. v. Dun and Bradstreet, Inc.,* 448 F. 2d 647 [10th Cir.], cert. den., 405 U. S. 1026, 31 L. Ed. 2d 486, 92 S. Ct. 1289; 29 Am. Jur. 2d, Evidence, §§ 380-386; 31A C. J. S., Evidence, § 188; Anno. 13 A. L. R. 2d 1409.)

The facts and circumstances more than adequately serve to satisfactorily establish the identity of the caller as Randy Williamson. When Steven Clark answered his telephone about 9:00 o'clock p. m. on March 28, 1971, the party at the other end of the line identified himself as "Randy Williamson." During the ensuing conversation, a possible drug transaction involving "black beauties" and marijuana was discussed. At the conclusion of that conversation, the person claiming to be Randy Williamson gave Clark a telephone number at which he could be reached. When Clark returned the call approximately one hour later, he talked to the same person who again identified himself as "Randy Williamson." During that conversation final arrangements for the transaction were agreed upon. Williamson was to meet Clark at the intersection of Central, Oliver and Elm Streets. The meeting was scheduled for 10:45 p. m. that night. Williamson said he would arrive in a yellow 1967 Pontiac, and was bringing six "lids" of marijuana for trading purposes. Shortly before the appointed time,

a yellow 1967 Pontiac entered a parking lot adjacent to the intersection of Central, Oliver and Elm Streets. Randy Williamson was one of the three occupants in the car. He was seated in the front on the passenger side to the right of Weymore. The car was searched, and a brown paper sack containing six plastic bags filled with marijuana was found in the Pontiac under the right side of the front seat where Williamson had been sitting.

The connection between the telephone conversations and the facts and circumstances surrounding the rendezvous creates a cogent inference the appellant's appearance at the location of the proposed barter and exchange was not by mere accident or coincidence. This court is of the opinion the district court did not err in admitting into evidence the telephone conversation.

The appellant next contends the search and seizure of the marijuana by Detective Drowatsky was in violation of his constitutional rights because the officer had no probable cause to arrest him; therefore, the search and seizure incidental to the arrest was unlawful. The premise upon which the argument is based is that Clark was unknown to the officers, thus having no reliable status as an informer.

The appellant has claimed no possessory interest in the automobile or the brown paper bag containing the marijuana; therefore, he has no standing to object to the search and seizure of Weymore's car. (*State v. Edwards*, 197 Kan. 146, 415 P. 2d 231; *State v. Grimmett & Smith*, 208 Kan. 324, 491 P. 2d 549.) In addition, the record shows that Weymore consented to the search prior to Drowatsky's investigation. Constitutional immunity from unreasonable searches and seizures may be waived by voluntary consent. (*State v. Pierson*, 202 Kan. 297, 300, 448 P. 2d 30; *State v. Boyd*, 206 Kan. 597, 481 P. 2d 1015; *State v. Boyle*, 207 Kan. 833, 486 P. 2d 849.)

Two of the appellant's witnesses did not appear to testify at his trial. The appellant asserted that had Weymore and Copley been present they would have corroborated his testimony. The appellant requested a continuance to secure those witnesses, which was denied by the district court. Moreover, as grounds for new trial, he contends that evidence in Copley's affidavit was newly discovered, and with reasonable diligence could not have been discovered and produced at the trial.

K. S. A. 1971 Supp. 22-3401 provides that continuances may be

granted either party for good cause shown. The granting of a continuance is within the sound discretion of the district court and will not be set aside unless the court has abused its discretion to the extent the movant's rights have been violated. When a party seeks a continuance because of the absence of a witness, he must show due diligence to procure the witness' testimony; he does not warrant a continuance merely upon an assertion he relied upon the promises of witnesses that they would be present and testify. (*State v. Zimmer,* 198 Kan. 479, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298; *State v. Milum,* 202 Kan. 196, 447 P. 2d 801; *Jackson v. State,* 204 Kan. 823, 465 P. 2d 927.) The appellant made no showing his witnesses could not have been available had he exercised due diligence, and his argument is without merit.

The motion for new trial was pursuant to K. S. A. 1971 Supp. 22-3501 (1). When the facts are fully within the knowledge of the movant at the time of his trial, they cannot subsequently be categorized as newly discovered evidence. (*State v. Oswald,* 197 Kan. 251, 417 P. 2d 261.)

In the affidavit of James Copley, he states:

". . . To the best of my knowledge I testified basically to this at Randy's Preliminary Hearing . . ."

The affidavit frankly admits no new evidence would be elicited at a new trial that was not obtainable at the trial. That admission precludes a conclusion otherwise by this court.

The appellant contends he was entrapped by Steven Clark acting as an agent of Detective Bolin. He asserts that no definite intent to sell the marijuana was shown; rather, a barter and exchange was discussed, but no specific commitment had been made for a trade.

An accused can rely on the defense of entrapment when he is induced to commit a crime which he had no previous disposition to commit; however, he cannot rely on the defense when he has shown a predisposition for committing the crime and was merely afforded an opportunity to consummate the crime by law enforcement officers. (K. S. A. 1971 Supp. 21-3210 [a]; *State v. Reichenberger,* 209 Kan. 210, 495 P. 2d 919.)

The facts and circumstances of this case negate any reasonable inference that the appellant was entrapped. In the initial conversation, Williamson concluded with a statement that he had some marijuana if Clark needed some. In the second conversation, Clark

made inquiry into the willingness of Williamson to barter. Williamson responded that he only had "six lids," but he could get more. Finally, at the scene of the transaction the marijuana was found under the seat where Williamson had been sitting. It is clear that Williamson had in mind a sale of marijuana, or he would not have brought it along. We hold that entrapment is no defense.

Other matters raised by the appellant to justify a reversal of his conviction have been reviewed. We find no merit in those assertions and it is unnecessary to burden this opinion by a detailed discussion of their particulars.

The judgment is affirmed.