No. 46,784

State of Kansas, *Appellee*, v. Harold W. Houpt, *Appellant*.

(504 P. 2d 570)

Opinion filed December 9, 1972.

*James F. Foster,* of Foster and Foster, of Wichita, argued the cause and was on the brief for the appellant.

*David P. Calvert,* Deputy County Attorney, argued the cause, and *Vern Miller,* Attorney General, *Keith Sanborn,* County Attorney, and *Keith I. Motley,* Deputy County Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant appeals from a felony conviction for the sale of d-lysergic acid diethylamide, commonly called LSD, in violation of provisions of the Uniform Narcotic Drug Act, (K. S. A. and K. S. A. 1971 Supp. 65-2601, *et seq.* [repealed, Laws of 1972, Chapter 234 (Laws of 1972, Chapter 235, amending Chapter 234)]). A jury was waived and in a trial to the court defendant admitted the drug sale but claimed entrapment as a defense.

The state's evidence consisted primarily of the testimony of David Stolzheise, an employee of the Sedgwick County Sheriff, who was assigned to the narcotic section. At the direction of Detective Goddard of the sheriff's staff, Stolzheise met with Fred Griffin, an informant, and Goddard the evening of July 23, 1971. Stolzheise was searched by Goddard and given $15 in marked money. Stolzheise and Griffin, pursuant to directions by Goddard,

proceeded to the Nomar Theater Parking Lot in Wichita. Stolzheise testified that he and Griffin were looking for a person other than defendant.

Stolzheise further testified:

"Q. Were there people at this location?

"A. Yes, quite a few.

"Q. Continue, please.

"A. We got out and asked if the suspect was around. Somebody said that he had just left. We looked around. Mr. Griffin saw Mr. Houpt and he went over to where he was.

"Q. Did you go with him?

"A. I was about five feet away from him.

"Q. Did Mr. Houpt and Mr. Griffin have a conversation: yes or no.

"A. Yes, they did.

"Q. Were you present?

"A. Like I said—about five feet away from them.

"Q. Could you hear what they said?

"A. Yes.

"Q. What was the conversation?

"A. Mr. Griffin asked Mr. Houpt if he had any LSD for sale, and he said, 'Yes.' Mr. Griffin pointed me out to Mr. Houpt at which time Mr. Houpt came over and asked me if I would like to buy some LSD, and I responded with 'Yes.'

"Q. Did you have a further conversation?

"A. Only as we walked back to his car. He asked me if I would like to buy eight hits for fifteen dollars, I think, and I said, 'No.' And then he asked me if I would go nine for sixteen, and I said, 'No.' I said that he was still a little high on his price.

"Q. Did you then give him any money?

"A. When we reached the car he was riding in I did give him fifteen dollars.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Apparently you went to a car, is that correct?

"A. Yes.

"Q. What kind of a car was it?

"A. A black '59 Ford Sedan.

"Q. Did you have any idea before you went to the Nomar Parking Lot that you would have anything to do with this car?

"A. No.

"Q. How is it you went to this car?

"A. That is where Mr. Houpt took me.

"Q. What happened at the car?

"A. I gave him the fifteen dollars. He put it in his pocket and then he got into the passenger side of the car and proceeded to count me ten hits of LSD and handed them to me, and then he counted five more and handed them to me."

Stolzheise further testified that he received a telephone call the next day from a man who identified himself as defendant. The result of the telephone call was that Stolzheise met with defendant at another parking lot. Defendant claimed that he had given Stolzheise too many pills and after some conversation, Stolzheise refunded five dollars to defendant. Stolzheise testified that he refunded the five dollars because he thought it was best to try to cover his undercover work.

Defendant, who testified in his own behalf, said that he was standing in a group talking when Griffin and Stolzheise approached and that "Griffin asked us in the group if there was any LSD." Defendant said he did not have any LSD in his possession, but that a friend handed him some, and then he and Stolzheise went to a friend's car where the transaction was consummated.

In view of the trial court's decision we are bound to accept the version of the state's witnesses. Under familiar rules governing appellate review, we will not weigh the evidence or pass upon the credibility of defendant's testimony—that was the function of the trial court as the trier of facts. (*State v. Duke,* 205 Kan. 37, 468 P. 2d 132; and *State v. Scott,* 199 Kan. 203, 428 P. 2d 458.) Thus, the narrow question before us is whether the conduct of Griffin and Stolzheise amounted to entrapment as a matter of law.

Defendant's chief argument on appeal is based primarily on the proposition that the substantive law of this state was changed by the codification of the defense of entrapment in K. S. A. 1971 Supp. 21-3210 of the new Kansas Criminal Code which reads:

"A person is not guilty of a crime if his criminal conduct was induced or solicited by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, unless:

"(*a*) The public officer or his agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator; or

"(*b*) The crime was of a type which is likely to occur and recur in the course of such person's business, and the public officer or his agent in doing the inducing or soliciting did not mislead such person into believing his conduct to be lawful."

Defendant takes the position that under the provisions of subsection (*a*) of the new statute, any solicitation by an officer or his agent, absent previous knowledge of prior criminal activity on the part of the accused, amounts to entrapment as a matter of law. Defendant says that the new statute has wrought a complete change in the law established by previous decisions of this court

with respect to the defense of entrapment as applied to a solicitation situation instigated by a law enforcement officer or his agent.

The state, on the other hand, contends that the proper interpretation of subsection (a) of the new statute is that where the ready compliance and conduct of a defendant is such that it may be inferred that criminal intent was already in existence in defendant's mind then, if the officer or agent does nothing more than merely afford an opportunity for commiting the crime in furtherance of such criminal intent or purpose, the defense of entrapment is not established.

Much of defendant's argument on appeal consists of his attempt to show a difference in the import of 21-3210, *supra*, and that of our decision in the recent case of *State v. Reichenberger*, 209 Kan. 210, 495 P. 2d 919, which was not decided within the purview of the new statute. However, since our decision in *Reichenberger* and subsequent to the filing of briefs and oral arguments in the instant case, we have filed our decision in *State v. Williamson*, 210 Kan. 501, 502 P. 2d 777. In *Williamson* the defense of entrapment was considered in the light of 21-3210 and although some factual differences are to be noted, we believe our holding in that case controls our decision here. In *Williamson* the sale of marijuana was solicited by telephone, but the evidence largely relied upon by the state to negate the defense of entrapment was the "willingness" of Williamson. In this connection we said:

". . . It is clear that Williamson had in mind a sale of marijuana, or he would not have brought it along. . . ."

In deciding the evidence negated the defense of entrapment, our holding was expressed in paragraph eight of the syllabus in these terms:

"An accused can rely on the defense of entrapment when he is induced to commit a crime which he has no previous disposition to commit; however, he cannot rely on the defense when he has shown a predisposition for committing the crime and was merely afforded an opportunity to consummate the crime by law enforcement officers." (Syl. ¶ 8.)

In the instant case, according to the testimony of Stolzheise he heard Griffin ask defendant if he had any LSD for sale—defendant answered yes. Griffin then pointed out Stolzheise to defendant. At this point defendant approached Stolzheise and actually solicited him to purchase some LSD. After a price was agreed upon, defendant escorted Stolzheise to the car where Stolzheise counted out

fifteen dollars and defendant counted out fifteen "hits" of LSD. This testimony constituted substantial competent evidence for the trier of facts to reasonably infer a previous intention or purpose to commit the crime and is sufficient to negate any reasonable inference that defendant was entrapped. As between defendant and Stolzheise, defendant was the instigator.

Although what has been said effectively disposes of this appeal, we believe the arguments made by counsel in their exhaustive briefs filed herein deserve consideration.

In *Reichenberger* the history of the defense of entrapment was chronicled, and for the first time, in this jurisdiction, entrapment was recognized as a legal defense in a factual situation involving the sale of contraband such as narcotics or illicit intoxicating liquor. In *Reichenberger* we said that uncensorable solicitation by a police officer met with ready and willing compliance by the actor is generally accepted as evidence of previous criminal intention. Instead of a showing of the existence of previous criminal intention, the language of subsection (*a*) of 21-3210, *supra*, requires that criminal purpose be originated by the accused. We see no difference in the import of the codified language and the parallel expression in *Reichenberger*. Both the new statute and our decision in *Reichenberger* restricts the conduct of the officer to that of merely affording an opportunity for committing the crime in furtherance of the criminal intent or purpose existing or originating in the mind of the accused. We believe the words "criminal purpose," as used in subsection (*a*), connotes only a general intent or purpose to commit the crime when an opportunity or facility is afforded for the commission thereof, rather than an intent to sell to a specific person at a specific time and place. We are not inclined to read requirements of specificity into the general term "criminal purpose" selected by the legislature in its codification. In other words, we believe the provisions of 21-3210, in essence, are merely a codification of what this court has said in *Reichenberger* and *State v. Wheat*, 205 Kan. 439, 469 P. 2d 338. The limitations on the conduct of an officer or his agent in subsection (*a*) that he "merely afford an opportunity or facility for committing the crime" echoes what was said in *Reichenberger* relating to the conduct of officers or agents involved. In this connection we repeat our holding in *Reichenberger* that, in considering the facts relative to the issue of entrapment, it is essential to distinguish

between a trap set for the unwary criminal and a trap set to ensnare the innocent and law abiding citizen. The 'valid purpose of the defense of entrapment is to protect the innocent from trickery or impermissible conduct on the part of a law enforcement officer or his agent so designed as to create a substantial risk that a person would acquire and sell narcotic drugs in the absence of criminal purpose to do so originating or previously existing in the mind of such person. In the instant case it cannot be said that the conduct of officer Stolzheise created any such substantial risk.

In his brief on appeal defendant makes much of the fact that the Judicial Council Committee notes appended to 21-3210 indicate that the statute was patterned after a proposed section of the Wisconsin Criminal Code, which was later deleted. Defendant cites Wisconsin Law Review Vol. 156 (May), p. 367, to the effect that the proposed codification of the defense of entrapment was deleted by the Wisconsin Advisory Committee prior to the submission of the proposed code to the Wisconsin legislature for the reason that it was not the law. Defendant uses "deletion" by the Wisconsin Committee as a basis for his argument that the Kansas legislature has changed the law. We do not speculate as to the reason for the deletion by the Wisconsin Advisory Committee, but we agree that the Kansas legislature did change the law as it existed at the time by raising entrapment in a solicitation situation to the stature of a legal defense. We accomplished essentially the same change in the case law of this jurisdiction in our decision in *Reichenberger* in which we overruled previous cases holding to the contrary.

Regardless of what happened in Wisconsin; as we noted in the *Reichenberger* opinion the legislature of Illinois in 1961 did adopt a codification of entrapment in essentially the same language as used in our 21-3210, *supra,* through subsection (*a*). The Illinois statute now appears as Illinois Annotated Statutes, 1972, Ch. 38, §§ 7-12, of the Illinois Criminal code and reads:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent or either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public *officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated.*" (Emphasis supplied.)

The language of the Illinois statute like that of 21-3210 negates

the defense of entrapment if the officer or his agent merely affords a person the opportunity or facility for committing an offense in furtherance of a criminal purpose originated by such person.

Illinois courts have read their statute in the same light in which we see 21-3210 (*a*). In the case of *People v. Gonzales,* 125 Ill. App. 2d 225, 260 N. E. 2d 234 (1970), in considering the statute the court said:

". . . Entrapment is not available to one who has the intention and design to commit the criminal offense, and who does commit the essential acts constituting it, merely because a law officer or his agents, for the purpose of securing evidence, affords such person the opportunity to commit the act, or purposely aids and encourages a defendant in its perpetration. . . . But, although a defendant has no prior criminal record, this factor alone cannot overcome evidence of his ability and instant willingness to make the unlawful sale as soon as the opportunity to do so is presented. . . ." (p. 232.)

Further in the opinion the court commented on the evidence as follows:

"On this record we conclude that the testimony of the witnesses for the State established beyond a reasonable doubt a willing sale, with no overbearing persuasion on the part of the agents, except the suggestion of what the purchase money could buy. The only reluctance displayed at the particular time of the admitted sale related to the price to be paid. This evidence showed that defendants were ready to make the unlawful sale and had quick access to a substantial quantity of narcotics. This established the criminal design in the minds of the defendants resulting in the acceptance of the opportunity offered, thus negating the defense of entrapment. . . ." (pp. 232, 233.)

See, also, *People v. Pickett,* 2 Ill. App. 3d 560, 276 N. E. 2d 751, (1971).

We believe the evidence recited by the Illinois court in the *Gonzales* opinion precisely fits the testimony of officer Stolzheise in the instant case. The conduct of defendant, according to the testimony of Stolzheise, showed instant willingness and ability to make the unlawful sale as soon as the opportunity to do so was afforded. There was no persuasion or urging on the part of either Stolzheise or Griffin. In fact defendant made the offer of sale to Stolzheise.

The judgment is affirmed.