No. 46,964

STATE OF KANSAS, *Appellee*, v. TIMOTHY ROBERT BROTHERS, *Appellant*.

(510 P. 2d 608)

Opinion filed May 12, 1973. 

*T. L. O'Hara,* of Wichita, argued the cause and was on the brief for the appellant.

*Reece C. Jones,* deputy district attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Timothy Robert Brothers was convicted by a jury upon two counts of selling LSD. New trial was denied, sentence was imposed June 23, 1972, and Brothers now appeals.

Appellant contends he was not tried by a jury of his peers. In his brief he states he was twenty-one years of age, that the jurors were persons of the age of thirty-five years or more and all younger persons were excluded from the jury at appellee's request. For several reasons the complaint cannot be sustained. First, appellant has failed to produce any record upon appeal showing either the composition of the jury as to age or the proceedings of its selection and impaneling. An issue will not be considered upon appeal where its existence depends upon facts which do not appear in the record before the appellate court. Appellee has supplied a supplemental record of the hearing on motion for new trial wherein the following comments by the trial court appear:

"If I recall correctly, the record in this case will show that all of the younger people that were excused from the jury, said that in their opinion they could not give this defendant a fair trial because the drug laws were too strict and I'm not going to keep anybody on the jury that tells me they don't think they can give the defendant a fair trial."

In its brief appellee states that at its request two jurors were excused for cause "who stated that they could not find the defendant innocent because of the sole fact that this was a drug case."

Second, it appears that prior to *voir dire* examination appellant made no challenge to the array as is required where a defendant is aware of the composition of the jury panel, which composition forms the basis of his objection to the panel's selection (see *Kirtdoll v. State,* 209 Kan. 508, Syl. ¶ 2, 496 P. 2d 1396).

Finally, assuming the facts to be as alleged by appellant, relief

could not be granted. Attacks upon constitutional grounds against a jury panel that it is not representative of the community in which the defendant is to be tried, absent any showing of systematic or purposeful discrimination to exclude members of a class from the panel, have not been sustained where the panel contained no women *(State v. Paxton,* 201 Kan. 353, 440 P. 2d 650), where it contained a disproportionate number of women to men (see *State v. Stanphill,* 206 Kan. 612, 620, 481 P. 2d 998), where no Negroes were on the panel in trial of a Negro defendant (*State v. Clift,* 202 Kan. 512, 449 P. 2d 1006), nor where the panel contained a disproportionate number of Negroes to Caucasians when the defendant was a Negro (*State v. Cushinberry,* 204 Kan. 65, 460 P. 2d 626). Purposeful exclusion is not satisfactorily proved by showing an identifiable segment of the community is not proportionately represented on the jury list *(State v. Stanphill,* supra). Systematic or purposeful exclusion of young persons from jury service has not been shown and no reason appears why the foregoing rules should not be applicable with respect to classification based upon age.

Appellant asserts error in that the trial court "refused to put in the instructions that the defendant sold LSD without first having obtained a license from the Board of Pharmacy of the State of Kansas."

Appellant was convicted of two different counts of sale of LSD, offenses described in K. S. A. 1971 Supp. 65-2602 (since repealed) in the following language:

"It shall be unlawful . . .

"(8) For any person to sell, offer for sale or have in his possession with the intent to sell any hallucinogenic or stimulating drug described in subsection (1) (*c*) of K. S. A. 65-2601, as amended."

K. S. A. 1971 Supp. 65-2601 (1) (*c*) described the substance commonly known as LSD as a hallucinogenic or stimulating drug.

Subsection (1) of K. S. A. 1971 Supp. 65-2602 made it an offense for a licensed pharmacist to deliver particular drugs except under certain conditions of prescription, direction for use, record keeping, etc.

The information under which appellant was convicted simply charged that on two different occasions he unlawfully possessed with intent to sell and sold LSD, as denounced by 65-2602(8). He was not charged with dispensing drugs in violation of 65-2602(1). We have held that where there is an exception in a statute defining an offense, and the exception forms an integral part of the offense defined, the information must negative the exception in order to

charge the offense (see, *e. g., State v. Jamieson,* 206 Kan. 491, 480 P. 2d 87, where this rule was applied with respect to the then existing abortion statute). Manifestly, the rule fails when the exception does not comprise an integral part of the offense defined. This is the situation here, one similar to that present in *State v. Perello,* 102 Kan. 695, 171 Pac. 630, in which it was held:

"In an information charging the violation of section 1 of the 'bone-dry law' (Laws 1917, ch. 215), making it unlawful 'for any person to keep or have in his possession . . . any intoxicating liquors . . . or to give away or furnish intoxicating liquors to another, *except druggists or registered pharmacists as hereinafter provided,'* it is not necessary to allege that the defendant was not a druggist or registered pharmacist.

"A negative averment of the matter of an exception or proviso in a penal statute is not necessary in an information, unless such matter enters into and becomes a material part of the description of the offense." (Syl. ¶¶ 1, 2.)

The same rule was applied in *State v. Braun,* 209 Kan. 181, 495 P. 2d 1000. There the defendant was convicted of possession of marijuana in violation of the Uniform Narcotic Drug Act (K. S. A. Chap. 65, Art. 25), section 17 of which provided:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this act, it shall not be necessary to negative any exception, excuse, proviso, or exemption contained in this act, and the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant."

In *Braun* in response to defendant's contention the state should have been required to prove he was not an exempt person this court, after quoting the foregoing statute, commented:

"There is nothing new about this provision in Kansas. In *State v. Miller,* 127 Kan. 487, 274 Pac. 245, it was held that when the state has established a *prima facie* case against a defendant charged with possession of narcotics, the defendant is under the necessity of combating this *prima facie* case by some explanation of his possession of the property consistent with his innocence, and his failure to make such explanation subjects him to the risk of conviction. The general rule has always been in Kansas that the accused has the burden of introducing evidence as a matter of defense that he is within an exception or exemption in the statute creating the offense where such exception or exemption is not part of the description of the offense. Accordingly, the prosecution owes no duty to prove on its case in chief that the accused is not within the exception. This, of course, is a mere rule of procedure and does not relieve the state of its burden of proving guilt." (pp. 189-190.)

Here the exception relied upon by appellant did not form an integral part of the offense with which he was charged and the trial court did not err in its instructions defining the elements of that offense.

Finally, appellant asserts the court erred in denying his request that the jury be instructed on entrapment as a defense. Brief review of certain evidence is in order.

The sales allegedly were made to Detective Michael J. Goddard, an officer assigned to the Narcotics and Drug Control Division of the Sedgwick county sheriff's department. This officer testified without objection that a confidential informant had previously told him that appellant was in the habit of selling LSD, had approached him for sales and he, the informant, could buy LSD from appellant. On March 21, 1972, at about 4:15 p. m. Detective Goddard, accompanied by the informant, went to Riverside Park in Wichita. There the informant introduced Goddard to appellant by the first name of Mark. Goddard asked appellant if he could "score" on LSD. Appellant replied he had some for sale. The detective asked appellant what he could do for ten—meaning ten dollars. Appellant said he could sell seven tablets for that. Goddard answered that that sounded fair, whereupon appellant took a plastic bottle from his jacket, opened it and counted out seven tablets which he handed to Goddard. Appellant asked if he needed anything to carry the pills in—Goddard replied he did not but appellant removed a cellophane wrapper from a cigarette package and gave it to Goddard. Goddard put the tablets in the cellophane and handed a ten dollar bill to appellant.

Goddard then said he was interested in buying one hundred bobs (tablets) of LSD. Appellant replied he had hundred lots for sale. Goddard said he was interested in buying two 100 lots and he asked how much they would cost. Appellant responded the cost would be $60.00 per 100 tablets. Goddard arranged a meeting place at appellant's home that night for the purchase of 200 tablets.

At about 10:30 p. m. Goddard, accompanied by the informant, arrived at appellant's house on East Skinner street. Appellant stated he did not have the stuff with him and they would have to go to the Blackout Bar at Twenty-first and Erie for it. In order to provide continued "backup" surveillance and protection for himself Goddard arranged to go first to a Sandy's Hamburger Stand. There he and the informant were joined by a female sheriff's officer who had a two-way radio in her purse. The trio then joined appellant in his automobile and drove to the Blackout Bar. Upon arrival at the bar parking lot appellant told Goddard he would have to "front" the money first (produce the $120.00) and then appellant would go into the bar and get the LSD and return with it.

Goddard replied he didn't want to work it that way, he was afraid of getting "burned", and appellant should go into the bar and talk to the individual who had the LSD and see if it could be arranged any other way. Appellant then went into the bar and in a few minutes returned saying that unless Goddard wanted to "front" the money there would be no deal. Goddard told appellant there would be no deal. Appellant then stated he had on him about 84 or 85 tablets of LSD which he would sell Goddard. Goddard asked as to the price. Appellant replied they would cost $55.00 and Goddard stated that that sounded fair. Appellant said he could sell what he had on him and make trips back and forth until he got the 200. When Goddard stated he didn't think this was a good idea, appellant responded that he could get more for sale the next day when he had enough "bread" together. The party then drove to Twenty-second and Erie street and parked. Appellant again produced a plastic bottle, counted the pills in it and said he had about 84. Goddard again asked about the price and appellant said he could have the lot for $50.00 rather than $55.00. Goddard handed over to appellant $50.00 in currency and, after appellant took it, identified himself and arrested appellant.

Appellant contends he was entitled to an instruction on entrapment. This defense is now codified and appears as K. S. A. 1972 Supp. 21-3210, as follows:

"*Entrapment.* A person is not guilty of a crime if his criminal conduct was induced or solicited by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, unless:

"(*a*) The public officer or his agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator; or

"(*b*) The crime was of a type which is likely to occur and recur in the course of such person's business, and the public officer or his agent in doing the inducing or soliciting did not mislead such person into believing his conduct to be lawful."

We have examined this new enactment in *State v. Williamson,* 210 Kan. 501, 502 P. 2d 777, and *State v. Houpt,* 210 Kan. 778, 504 P. 2d 570; (see, also, *State v. Farmer,* 212 Kan. 163, 510 P. 2d 180).

In *Williamson* we held:

"An accused can rely on the defense of entrapment when he is induced to commit a crime which he has no previous disposition to commit; however, he cannot rely on the defense when he has shown a predisposition for committing the crime and was merely afforded an opportunity to consummate the crime by law enforcement officers." (Syl. ¶ 8.)

Our holding in *Houpt* was summarized thus:

"In a prosecution for the unlawful sale of a narcotic drug, wherein the defense of entrapment was asserted, the record is examined and it is *held:* There was substantial competent evidence that defendant was willing to make the sale; had ready access to the drugs; and that the defense of entrapment was negated by evidence showing criminal purpose in the mind of defendant and resulting acceptance of opportunity to make the sale." (Syl. ¶ 2.)

In *Houpt* we commented approvingly on Illinois' judicial interpretation of their statute on entrapment similar to our own, as follows:

"The language of the Illinois statute like that of 21-3210 negates the defense of entrapment if the officer or his agent merely affords a person the opportunity or facility for committing an offense in furtherance of a criminal purpose originated by such person.

"Illinois courts have read their statute in the same light in which we see 21-3210 (*a*). In the case of *People v. Gonzales*, 125 Ill. App. 2d 225, 260 N. E. 2d 234 (1970), in considering the statute the court said:

" '. . . Entrapment is not available to one who has the intention and design to commit the criminal offense, and who does commit the essential acts constituting it, merely because a law officer or his agents, for the purpose of securing evidence, affords such person the opportunity to commit the act, or purposely aids and encourages a defendant in its perpetration. . . . But, although a defendant has no prior criminal record, this factor alone cannot overcome evidence of his ability and instant willingness to make the unlawful sale as soon as the opportunity to do so is presented. . . .' (p. 232.)

"Further in the opinion the court commented on the evidence as follows:

" 'On this record we conclude that the testimony of the witnesses for the State established beyond a reasonable doubt a willing sale, with no overbearing persuasion on the part of the agents, except the suggestion of what the purchase money could buy. The only reluctance displayed at the particular time of the admitted sale related to the price to be paid. This evidence showed that defendants were ready to make the unlawful sale and had quick access to a substantial quantity of narcotics. This established the criminal design in the minds of the defendants resulting in the acceptance of the opportunity offered, thus negating the defense of entrapment. . . .' (pp. 232, 233.)" (pp. 783-784.)

The matter here need not be labored. There was direct evidence appellant was previously in the business or at least the activity of selling LSD. Moreover, his conduct on the two occasions of sale amply demonstrated this fact. The provisions of subsection (*b*) of 21-3210 seem peculiarly appropriate here. Their application was illustrated in the Judicial Council comments:

"Some criminal activity is very difficult to detect unless law enforcement officers are permitted to take the initiative, in the form of solicitation. Under

the safeguards provided for the defendant in subsection (*b*), they are permitted to do so. The crime must be of a type which is likely to occur and recur in the course of the actor's business or activity. For example, if the actor is in the business of selling intoxicating liquors or if his activity is selling narcotics, it is permissible for a law enforcement official to solicit a sale. If the actor is willing to sell to the official who pretends to be an ordinary patron, it is safe to assume that he would make similar unlawful sales to other persons."

Nothing censurable about the conduct of the officer or his informant agent appears. The only evidence in the record adduced on appellant's behalf consisted of the testimony of a woman who had been acquainted with him for about six months prior to the offenses in question. She testified appellant was not known to sell drugs generally and that she had never known of a previous sale; another woman who had known appellant for about two years testified she had never heard of him as a drug pusher and had known of no previous sales. Under the circumstances here presented evidence of this negative character is insufficient to raise any controverted factual issue respecting the defense of entrapment and we must conclude the trial court did not err in denying appellant's request for such an instruction.

The judgment is affirmed.

APPROVED BY THE COURT.