No. 48,270

STATE OF KANSAS, *Appellee,* v. ROSARIO PERALES, *Appellant.*

(556 P. 2d 172)

Opinion filed November 6, 1976.

J. *Stephen Nyswonger,* of Braun & Nyswonger, of Garden City, argued the cause and was on the brief for the appellant.

*Don Vsetecka,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Rosario Perales, appeals from a conviction by a jury of aggravated robbery in violation of K. S. A. 21-3427.

At approximately 1:30 a. m. on March 29, 1975, Mrs. Barbara M. West was awakened by the ringing of the doorbell and a loud banging or pounding at the front door of her home. Mrs. West left her husband in bed, went to the door and inquired who was there. She testified that thinking the storm door was locked, she opened the inner front door in an attempt to see who was there. Apparently, the storm door was not locked for, as soon as Mrs. West opened the inside door, two armed men rushed through the

doorway and she was slammed up against the wall and held by one of the men. The man who held her against the wall was described by Mrs. West as being a short, stocky Mexican-American man wearing a beige ladies' stocking over his head. This individual was positively identified at trial by Mrs. West as the defendant. She described the other individual, (later identified as Walt Donaho), as a white man about five feet eleven inches or six feet in height, and of slender build. Mrs. West testified that despite the presence of the stocking, the defendant's face was not distorted enough to prevent her identification of him.

Within a minute or two Mrs. West's husband, Rex C. West, emerged from the bedroom and was ordered to "hit the floor." Mrs. West was then ordered to lie prone on the living room floor beside her husband. One of the men asked Mr. West, a drug salesman by trade, where the drugs were kept. Mr. West replied that the pharmaceuticals that he had were in the garage and that he would get up and show them. As he started to get up, West testified that he was told by the Mexican man, "You move again and I'll blow your brains out." At this point, the white man proceeded to search the house. He found Mr. West's billfold and took $400 in cash from it. The two intruders then placed the Wests in their bedroom closet and told them to stay there for fifteen minutes. Mr. and Mrs. West waited a little while in the closet and then called the police.

Detective Ronald Broetzmann came to the West home and took a description of the two assailants from Mr. and Mrs. West.

On the day following the robbery Mr. West received an anonymous telephone call from a lady advising him that Rosario Perales and a man named Walt Donaho had committed the robbery. This information was relayed by West to Detective Broetzmann who was investigating the case. Broetzmann assembled eight "mug shot" photographs representing four white and four Mexican-American men. The photographs were taken to the West residence and separately displayed to Mr. and Mrs. West. Broetzmann testified that the names on the photographs were covered when shown to the Wests and that neither of them could have selected the photograph of defendant by name, but that each "had to know it by face." Evidence of the Wests' identification of defendant's mug shot was admitted at trial. In addition, Mr. and Mrs. West made a positive identification at trial of the defendant as being one of the robbers.

Defendant served a notice of the defense of alibi and called four witnesses to testify that defendant was observed at a night club bar at the time of the robbery. The testimony of the alibi witnesses was not definite as to time. In any event, the jury believed the testimony of Mr. and Mrs. West, rather than that of the alibi witnesses as to the whereabouts of defendant at the time in question.

Defendant raises five points on appeal. His first two points concern the admission into evidence of the eight "mug shot" photographs. In substance, defendant contends there was no proper foundation laid by the state; that the exhibits were prejudicial, irrelevant and of no probative value, and gave rise to an inference that defendant had a prior arrest record. Defendant further complains that he was the only Mexican-American male "having bushy type hair" who was depicted by the photographs. In his brief defendant argues:

". . . In the photographs of the four Mexican males only one Mexican male had 'curly hair'. The other three remaining photographs of Mexican males showed one individual as clean shaven with a closely cropped hair cut; one individual neat appearing wearing glasses and another individual being non-descript with neatly trimmed hair. . . ."

In contrast the state says:

". . . The difference among the physical descriptions of the four Mexican-American males in the photographs used is not as great as appellant indicates in his brief. . . ."

Defendant has not designated nor reproduced the eight "mug shots" in the record, but, nevertheless, he asks that we blindly declare the series of photographs to be unnecessarily suggestive—this we cannot do. It is incumbent upon the party appealing to bring up a complete record of all matters upon which appellate review is sought. (*State v. Jones*, 214 Kan. 568, 521 P. 2d 278; and *State v. Brothers*, 212 Kan. 187, 510 P. 2d 608.)

In view of defendant's alibi defense, the critical issue in this case was identity; thus all matters pertaining to identification procedures were relevant. The admission of all eight photographs was the only way the jury could see just how fair or unfair the identification procedure was by comparing defendant's characteristics with those of the other men pictured. This is not a case where the evidence was offered to show character as in the case of *State v. Minor*, 195 Kan. 539, 407 P. 2d 242.

In such cases it is the duty of the trial court to first determine relevancy and then proceed to balance the probative value of the

evidence against the prejudicial effect, if any, to the accused. As we have previously indicated, the photographs were not reproduced, but from the record before us, identity was the critical issue, the evidence was relevant and the probative value in showing the identification procedures outweighed any prejudicial effect. In accord see *People v. Bleimehl,* 9 Ill. App. 3d 273, 292 N. E. 2d 60; *State v. Mathis,* 261 La. 564, 260 So. 2d 625; and cases collected in 30 A. L. R. 3d, 1975 Supp., Anno. § 3[a], p. 73.

The testimony of Detective Broetzmann and Mr. and Mrs. West fails to disclose that the photographs were shown to either of the Wests in a suggestive manner. Even if there had been some showing of suggestiveness the in-court identifications of defendant by the Wests would be capable of standing on their own. (*State v. Bey,* 217 Kan. 251, 535 P. 2d 881; *State v. Lora,* 213 Kan. 184, 515 P. 2d 1086; and *State v. Calvert,* 211 Kan. 174, 505 P. 2d 1110.) We find no error in the admission of the evidence in question on any of the grounds advanced by defendant.

Defendant's next point concerns a statement of the prosecutor during closing argument to the effect that defendant committed the crime and will do it again unless he is convicted. In response to defendant's objection, the trial court ruled:

"For the record, the County Attorney has made the statement that the defendant committed this crime and he's going to do it again unless he's convicted. An objection has been made. I will sustain that objection to the extent, members of the jury, that what might happen in the future is pure conjecture and not to be considered."

The trial court promptly recognized the objectionable aspects of the prosecutor's statement. We believe the prompt action of the trial court cured any possible prejudice to defendant. In this connection we held in *State v. Warbritton,* 215 Kan. 534, 527 P. 2d 1050:

"Improper remarks made by the prosecuting attorney in his summation to the jury will not provide a basis for reversal where the jury has been instructed to disregard the same, unless the remarks were so prejudicial as to be incurable." (Syl. 1.)

Defendant's final two points are stated in this language:

"POINT No. 4: The Trial Court erred in overruling the appellant's motion for directed verdict in that the State failed to rebut the defendant's proffered defense of alibi; the burden resting solely with the State to prove its case beyond a reasonable doubt and to disprove the defendant's defense of alibi which the State, in fact, failed to do.

"POINT No. 5: The Trial Court erred in overruling the appellant's motion for new trial on all points and more particularly the jury's verdict as returned was contrary to the evidence as presented at the time of trial."

The applicable rule, so often stated, appears in the recent case of *State v. Brown*, 217 Kan. 595, 538 P. 2d 631, wherein we held:

"In a criminal case, the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state." (Syl. 5.)

See, also, *State v. Glover*, 219 Kan. 54, 547 P. 2d 351; and *State v. Sparks*, 217 Kan. 204, 535 P. 2d 901.

Obviously, the jury believed the identification testimony of the Wests rather than the testimony of defendant's four alibi witnesses. This result is easily understandable after a close examination of the record. Two of defendant's witnesses were unable to pinpoint what night it was that they were with defendant. Another witness, Johnnie Holmes, Jr., placed defendant at a bar on the night in question, but could only say that defendant was "probably there at 1:00 o'clock" and could not positively say defendant was there at 1:30 in the morning. The strongest alibi witness, Benny Guerrero, testified that he observed defendant at the bar at 1:30, but on cross-examination Guerrero admitted that he had been contacted by Walt Donaho and that Donaho told him he had been accused of participating in a robbery and wanted Guerrero to state that he had observed Donaho in the bar at the time the crime was committed. While Guerrero denied any such contact with defendant, nevertheless, his admission, in this regard, could well have affected his credibility in the eyes of the jury.

The record clearly supports the trial court's refusal to direct a verdict or grant a new trial.

The judgment is affirmed.