# CHARLES STANLEY JORDAN v. STATE OF MARYLAND

[No. 237, September Term, 1974.]

*Decided January 13, 1975.*

268

The cause was argued before Thompson, Moore and Lowe, JJ.

*Alan M. Wolf, Assigned Public Defender*, for appellant.

*Leroy Handwerger, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *V. Lanny Harchenhorn, State's Attorney for Carroll County*, on the brief, for appellee.

Thompson, J., delivered the opinion of the Court.

Charles Stanley Jordan, appellant, and a co-defendant were convicted for conspiracy to wear, transport and carry handguns in violation of Md. Code, Art. 27, §§ 441, 36B-36F, by the Circuit Court for Carroll County, Judge Edward O. Weant, Jr. presiding with a jury. He was also convicted for: receiving a stolen .38 caliber Colt Agent revolver, property of the Mayor and City Council of Baltimore City, valued at $104.95; receiving a stolen .38 caliber Smith & Wesson revolver, the property of Gilbert Holniker, valued at $54.96; receiving a stolen Colt Pithon .357 caliber Magnum revolver, the property of Stuart Distributing Co., Inc. valued at $199.95; receiving a stolen .270 caliber Winchester rifle,

the property of Roger L. Houpt valued at $500.00; and unlawfully transporting a handgun in a vehicle traveling upon the public roads and highways of the State. The facts will be set out as required to discuss each issue raised on appeal.

## I Speedy Trial

Prior to trial, appellant moved that the indictments be dismissed for lack of a speedy trial. The record shows that no evidence was produced at the hearing on the motion, which was denied prior to trial. We are, therefore, limited by not having the complete facts upon which to base a decision. The record shows that on April 6, 1973, the appellant was indicted on charges for which he was eventually convicted and that on June 5, 1973, he filed a motion for a speedy trial alleging as follows:

"1. That the Defendant herein was arrested on August 27, 1972.

2. That although the defendant made a Motion for Speedy Trial in the District Court for Carroll County in September the hearing in the District Court did not occur until April 4, 1973.

3. That on April 4, 1973 in the said District Court, the State was still unprepared to try the case and entered a Nol Pros.

4. Thereafter the aforesaid indictments were drawn by the Grand Jury.

5. Although 10 months have passed since the arrest no trial on the merits has been held or date of trial set.

6. This unnecessary long delay by the State to prosecute this case has permanently and irreparably prevented his adequate defense of these charges.

WHEREFORE: The Defendant, Charles Stanley Jordan, by his attorney, Alan M. Wolf moves that these indictments be dismissed forthwith."

Trial in the Circuit Court was set for September 13, 1973, but co-defendant's counsel requested a postponement because that date was a Jewish holiday; thereafter the case was scheduled for November 16, 1973 at which time trial began.

Appellant produced no evidence to show when he was arrested. He did not produce his motion for speedy trial in the District Court or any evidence that the case was called for trial on April 4, 1973 or that it was nol prossed. From the admissions of the State's Attorney it may well be that all of the matters alleged in the motion were accurate but in spite of that, we do not know on what charges the appellant was arrested. There are in the record some of the original charges against co-defendants, but none of them show for example that there was a charging document issued for receiving the .38 caliber revolver which was the property of Gilbert Holniker. Neither does the record show whether or not the appellant was granted bail after his arrest. Inasmuch as he promptly posted bail after the indictment and after his conviction, we assume that he was on bail but there is nothing in the record to establish that. In view of what we have said, the record was inadequate for the trial judge, or us, to find the appellant was denied a speedy trial on any of the charges.

There is no serious argument that a speedy trial was denied after the indictment was filed. We decline on the state of the record to review the question in detail and we affirm the action of the trial judge. *See State v. Williams*, 6 Md. App. 5, 249 A. 2d 503 (1969). In making our decision, we are acutely aware that when the appellant's counsel was making a statement to the court alleging prejudice to the accused, he specifically declined the court's invitation to offer any evidence of prejudice.[1]

---

1. We do wish to comment, however, on the failure of the State's Attorney to produce any testimony explaining the delay. It is true he made a general oral reference to administrative difficulties and volume of work; he mentioned that one witness had to be brought from Florida, another from Baltimore City, one from Baltimore County and one from Washington County. There was also evidence that a trial on some charges arising out of

## II Sufficiency of the Evidence

On August 27, 1972, Trooper Douglas Brown of the Maryland State Police investigated a complaint by a Mr. Collins that there was someone shooting on his farm. When he and Mr. Collins approached the scene of the shooting, Trooper Brown heard one shot but could not see anything at that point as a crest of a hill blocked his vision. He proceeded farther and saw four people, including the appellant whom he identified in court. The four individuals were about five feet apart. He observed Brenda Lou Pinkett, a co-defendant, pass a rifle to Andrew Strickland, who was also charged, who proceeded to fire the rifle. He observed that the rifle was being fired at silhouette targets. The targets were approximately seventy-five yards from the four individuals. He also observed a sawed-off shotgun and thirteen handguns about ten feet in front of appellant and his companions. Trooper Brown stated that Mr. Collins advised him that neither he nor his brother who owned the land jointly with him had given any of these individuals permission to come on their property. The trooper thereupon had the four persons place all the weapons in a cloth bag that was also found at the scene. The bag containing the weapons, together with a bag containing ammunition boxes, was carried up a hill and towards two automobiles, one of which, a white Buick Electra, was owned by the appellant. The appellant, who had a key to the trunk of the car, opened it and placed the weapons in the trunk. Trooper Brown then proceeded to call his barracks on his car radio to ascertain whether any of the weapons were stolen. Upon receiving certain information from the barracks and being aware of a violation as to the sawed-off shotgun, he arrested the

---

the incident hereinafter described were conducted in the federal courts prior to the time they were tried in Carroll County. It may well be that detailed testimony would have produced adequate explanation of why the State could not dispose of the case in the District Court in less than eight months after the demand for a speedy trial was made. In the absence of an adequate testimonial explanation we might well have reversed had the appellant established a suitable record. Of course, we are aware that the State's cavalier treatment of the motion could have been inspired by the appellant's equally cavalier treatment.

272

defendants, took them to the barracks and had them fingerprinted. The four weapons which were alleged in the indictments to have been stolen were all identified and admitted into evidence. Trooper Brown stated that the appellant, in response to the Trooper's inquiry, told him that he had been on Mr. Collins' farm on previous occasions target shooting and that he belonged to the Henry James Gun Club in Baltimore; the officer testified on cross-examination that the appellant stated the guns belonged to the gun club.

Herbert McAllister testified as follows: On August 27, 1972, he received a telephone call from the appellant requesting that he join him in target practice. McAllister got in his car and proceeded to follow appellant to Carroll County. On the way they were joined by Andrew Strickland, who went with them to the target practice; the appellant also met the co-defendant, Brenda Lou Pinkett, who entered the appellant's car and proceeded with them. When they reached the farm, the appellant opened the trunk of his car and he, Strickland and McAllister removed a case and two bags from the trunk and took them to the field. The co-defendant, Pinkett, picked up the targets and took them to the field. McAllister testified that when they opened the bags, he saw handguns in them. The contents of the bags were emptied on the ground and he, McAllister, took a weapon and started target shooting; he also saw the appellant and Strickland picking up some guns. McAllister had never seen these guns before and he heard the appellant tell Trooper Brown that the guns belonged to a gun club.

Officer David Williams, of the Baltimore City Police Department, testified as to the disappearance of a "Colt Agent" .38 caliber handgun from the police property room on November 20, 1969. The handgun was one of the handguns recovered at the scene of the appellant's arrest.

Roger Houpt testified that his house was broken into on November 15, 1971, at which time nine guns were stolen from him, including the rifle which was recovered at the scene of the appellant's arrest.

Gilbert Holniker testified that between November 3, 1971 and November 5, 1971, a handgun which he owned was stolen from his place of business. The handgun was also among the weapons recovered at the scene of the appellant's arrest.

Edward John Weihs, Jr. testified that on September 2, 1971, a handgun was stolen from Marvin's Sport City, a sporting goods store. He was an assistant to the president of the company which owned Marvin's Sport City. This handgun was also among the weapons recovered at the scene of the appellant's arrest.

The appellant testified that on the morning of August 27, 1972, he went to the apartment of his girlfriend, Linda Brown, and obtained the guns which he took to the target practice. The guns belonged to Mrs. Brown's deceased husband from whom she had been separated. He denied that he had any knowledge that any of these guns had been stolen. At 12:00 noon he called McAllister for the purpose of asking him to join him at target practice. He denied that he told Trooper Brown that he obtained the guns from the Henry James Gun Club. He testified he had been imprisoned in Petersburg, Virginia from May 18, 1970 until February 22, 1972, and thus was in prison at the time all of the guns were stolen, except for one which had been stolen from the Baltimore City Police Department in 1969.

Linda Brown testified that before her husband died he had brought the guns to her apartment. She stored these guns in the storage bin in her apartment house. On the afternoon of August 27, 1972, between 1:00 and 2:00 p.m., the appellant came to her apartment to get the guns. She testified that she didn't want to know where her husband had gotten the guns because, knowing her husband, she was afraid to find out. She stated that the appellant knew her husband, a fugitive, had been killed by the police, and thereafter knew of his criminal background.

Appellant contends the evidence was insufficient to support the handgun convictions because it showed the conduct was within a statutory exception, Md. Code, Art. 27, § 36B (c) (3):

"* * * Nothing in this section shall prevent any person from wearing, carrying, or transporting a handgun used in connection with a target shoot, formal or informal target practice, sport shooting event, hunting, trapping, dog obedience training class or show or any organized military activity while engaged in, on the way to, or returning from any such activity. Nothing in this section shall prevent any bona fide gun collector from moving any part or all of his gun collection from place to place for public or private exhibition. However, while traveling to or from any such place or event referred to in this paragraph, a handgun shall be unloaded and carried in an enclosed case or enclosed holster."

There was no evidence to show the guns were unloaded and the burden is on an accused to show he comes within a statutory exception. *Spurrier v. State*, 229 Md. 110, 112, 182 A. 2d 358 (1962); *Agee v. State*, 8 Md. App. 148, 151, 258 A. 2d 779 (1969). In addition it could hardly have been the legislative intent to permit the guns to be carried in an unfastened sack when it used the language "carried in an enclosed case or enclosed holster". While this language may not require a customary gun case or holster it does require more than an unfastened sack.

The appellant's convictions for receiving stolen goods are supported by the rule found in numerous cases that, in the absence of a satisfactory explanation, a person found in the exclusive possession of recently stolen goods can be convicted of the theft, the burglary or, if others are shown to have been involved, receiving the goods. *Anglin v. State*, 244 Md. 652, 656, 224 A. 2d 668 (1966); *Jordan v. State*, 219 Md. 36, 148 A. 2d 292 (1959); *Anderson v. State*, 9 Md. App. 532, 541, 267 A. 2d 296 (1970).

Neither this Court nor the Court of Appeals has set out an ironclad rule as to the meaning of the term "recent." Instead its meaning has been declared to be relative and dependent

upon the surrounding circumstances. In *Gamble v. State*, 2 Md. App. 271, 234 A. 2d 158 (1967) this Court held:

"The requirement that goods be 'recently' stolen is a relative one. In *Anglin v. State*, 1 Md. App. at page 92, this court, quoting *Butz v. State*, 221 Md. 68, 77 said:

'The term "recent" when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with circumstances of the case. 1 Wharton, *Criminal Evidence* (12th Ed.), Section 135, Cf. Underhill's *op. cit.*, Sec. 723; 32 Am. Jur., *Larceny*, Sec. 142.' " *Id.* at 275.

*Jones v. State*, 5 Md. App. 180, 185, 245 A. 2d 897 (1968). Applying the rule in *Cason v. State*, 230 Md. 356, 187 A. 2d 103 (1963) stolen property found in possession of the defendant over four months after its theft was deemed "recent" by the Court of Appeals; in *Anglin v. State*, 1 Md. App. 85, 227 A. 2d 364 (1967) over six months; in *Gamble v. State*, *supra*, about six months.

In the case at bar, two of the weapons involved were stolen approximately 10 months prior to the appellant's arrest, another approximately 1 year, the other approximately 3 years. While in the abstract these lengths of time may not seem "recent", the surrounding circumstances support a holding that the lengths of time were recent. We have no difficulty in holding the 10 month periods to be recent under the rule. The other two guns, being acquired simultaneously in these peculiar circumstances, must also be considered as recently stolen. This is not to say that such lengths of time, even 10 months, would be held to be within the rule in an ordinary case.

The verdict can be supported on yet another ground. Both the appellant and Linda Brown testified that the appellant had picked up the guns from Mrs. Brown's apartment on the day of his arrest. It appears significant that the sack contained more than 13 weapons, including a federally

276

prohibited sawed-off shotgun. Four of the weapons were established to be fruits of separate and distinct larcenies. The appellant knew the guns had belonged to Mrs. Brown's estranged husband, who had been killed by the police several months earlier as a fugitive. The appellant knew of the criminal background of Mrs. Brown's husband. More importantly, at the time of his apprehension appellant falsely informed the police officer that the guns belonged to a gun club.

Proof of knowledge that the goods an accused possesses were stolen may be proved, as any other fact, by evidence establishing that the accused had "actual or direct knowledge" or by circumstantial evidence which permits a rational inference that the accused, although he may deny it, knew the goods were in fact stolen. *Clarke v. State*, 9 Md. App. 570, 573, 266 A. 2d 359 (1970). In *Clarke*, this Court added:

> "Moreover, as this Court said in *Greenway v. State*, 8 Md. App. 194, it is a well recognized rule of law that an individual 'with an unlawful purpose in mind, who deliberately "shuts his eyes" to avoid knowing what would otherwise be obvious to view, acts at his peril in this regard as far as the criminal law is concerned, and is treated as having "knowledge of the facts as they are ultimately discovered to be." Perkins, *Criminal Law* (1957), pp. 684-685.' "

The reasonableness of the explanation given by the appellant as to his possession of the weapons, as with all other matters of fact, was for the triers of fact to determine. *Streat v. State*, 11 Md. App. 543, 548, 275 A. 2d 537 (1971); *Boswell v. State*, 5 Md. App. 571, 577-578, 249 A. 2d 490 (1968).

### III Other Contentions

Appellant also raises the following contentions:

> "Were the defendant's constitutional rights, under the due process of the constitution denied when the

State refused to try the case in the District Court of Maryland before proceeding to the Circuit Court level?"

"Did the sentences of six years consecutive to the federal 5 year sentence or a total of 11 years arising from the same incident constitute cruel and unusual punishment?"

The contentions are devoid of merit and require no discussion.

*Judgments affirmed.*