(892 P.2d 522)
No. 71,183

STATE OF KANSAS, *Appellee,* v. BRIAN DAVID BENNETT, *Appellant.*

Opinion filed March 31, 1995.

*Michael F. Brunton,* of Law Offices of Michael F. Brunton, of Topeka, for appellant.

*Joel W. Meinecke,* first assistant district attorney, *Joan M. Hamilton,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before LARSON, P.J., PIERRON, J., and JOHN ANDERSON III, District Judge, assigned.

ANDERSON, J.: Brian D. Bennett appeals his conviction of unlawful possession of a firearm. He argues the trial court erred in admitting a pistol into evidence. He also challenges the sufficiency of the evidence supporting his conviction and alleges the trial court erred in denying his motion for judgment of acquittal.

On February 26, 1993, Bennett drove to Washburn Rural High School to retrieve his friend, Andrew Wolfe. Bennett had permission from Wolfe's mother to pick Wolfe up after a basketball game.

At approximately 9:45 p.m., Sergeant Paul Fisher and Corporal Mike Ramirez, of the Shawnee County Sheriff's Department, were patrolling the high school parking lot when they stopped a vehicle for erratic driving, intending to direct the driver to leave the lot. When the officers activated the emergency light mounted on the dashboard of their unmarked police car, the suspect vehicle immediately came to a stop. Ramirez approached the vehicle from the driver's side, and Fisher approached from the passenger side. Ramirez tapped on the driver's window twice, and the driver finally responded. The driver rolled down his window and held out a mini-cassette recorder, indicating to Ramirez that he was recording the conversation because the sheriff's department had "hassled" him in the past about another incident.

Ramirez testified that he was speaking with the driver when Fisher opened the passenger side door, "lunged" into the vehicle, and emerged with a .9 mm handgun from inside the vehicle. Ramirez then opened the driver's door and requested that the driver step from the vehicle.

Fisher testified the passenger side window was tinted and he could not see into the car. He could tell the car contained a passenger in addition to the driver but could not see who the passenger was. Fisher indicated that he opened the passenger door of the vehicle only after the driver had refused to exit the vehicle at the request of Ramirez. The interior light of the vehicle came on when the door was opened; within Fisher's plain view was a .9 mm automatic gun lying on top of the console. Fisher admitted he had no reason to believe that a crime was being

committed at the time he opened the passenger side door. Ramirez then arrested the driver, Brian D. Bennett, for carrying the weapon on the school grounds.

Bennett was charged with and found guilty of criminal possession of a firearm in violation of K.S.A. 1992 Supp. 21-4204(1)(d). After Bennett's conviction, defense counsel argued the gun was obtained as a fruit of an unreasonable search and seizure. In accordance with the arguments made by the State in response to Bennett's motion to suppress, the court ruled that "the issue of suppression has not been brought before this Court as required. So I—I don't believe it's appropriate to raise a suppression issue at this time." Bennett also made a motion for an acquittal, which the court denied.

Bennett testified the gun belonged to his brother. He said he borrowed it for target practice with his brother's permission. The trial court found Bennett guilty of unlawful possession of a firearm. The trial court suspended imposition of sentence and placed Bennett on probation for two years. Bennett appeals.

Motions to suppress evidence are governed by K.S.A. 22-3216(3), which provides in part: "The motion [to suppress evidence] shall be made before trial, in the court having jurisdiction to try the case, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the trial." This court has specifically ruled that while the motion must ordinarily be filed before trial, "the trial court does have discretion to entertain a motion for suppression after the commencement of the trial." *State v. Wickliffe*, 16 Kan. App. 2d 424, 428, 826 P.2d 522 (1992).

In *Wickliffe*, the trial court mistakenly believed it had no choice but to deny the motion since the defendant failed to make the motion in writing. We held the trial court erred in failing to exercise its discretion to determine whether the defendant's failure to raise the motion to suppress prior to trial was excusable. However, the *Wickliffe* court went on to determine that the error was harmless because evidence of the car owner's wallet uncovered from the vehicle was cumulative in light of the other evidence

presented to support the car theft conviction. 16 Kan. App. 2d at 430-31.

The only evidence of Bennett's unlawful possession of a firearm is the gun itself. Unlike the wallet in *Wickliffe*, if the gun was suppressed, the State would not have any evidence to support the conviction. Therefore, if the trial court's discretion had been invoked, its failure to exercise that discretion and consider whether Bennett's failure to raise the motion to suppress prior to trial was excusable cannot be considered harmless error.

However, *Wickliffe* suggests that a trial court's discretion to hear the motion is invoked only after the defendant claims that he did not file a written pretrial motion to suppress because he was not aware of the grounds for the motion prior to trial. *Wickliffe*, 16 Kan. App. 2d 428. Bennett never argued that he was unaware of the grounds supporting his motion to suppress prior to trial. He failed to file a written pretrial motion to suppress and failed to argue before the trial court that his failure to file the motion was otherwise excusable. The trial court properly declined to hear his motion to suppress the firearm.

Bennett next argues the trial court erred in denying his motion for judgment of acquittal. He contends the State failed to prove an element of criminal possession of a firearm—that he was not a law enforcement officer at the time of the offense. The State maintains that possession of a firearm by a police officer is an exception to the statute and is, in essence, a defense for which Bennett shoulders the burden of proof.

In denying a motion for judgment of acquittal, the trial court must determine that the evidence is sufficient to support a rational factfinder rendering a guilty verdict beyond a reasonable doubt. If there is sufficient evidence, this court must affirm the ruling of the trial court. K.S.A. 1992 Supp. 21-4204(1)(d) defines misdemeanor criminal possession of a firearm as "possession of any firearm by any person, other than a law enforcement officer, in or on any school property." The State presented no evidence that Bennett was not a law enforcement officer. If the fact that Bennett was not a law enforcement officer is an element of the crime, the trial court should have granted an acquittal.

We have not addressed whether not being a law enforcement officer is an element of K.S.A. 1992 Supp. 21-4204(1)(d). However, Kansas law is clear that

"if a criminal statute prohibits certain conduct, but contains an exception permitting the conduct if performed under certain conditions or by certain classes of persons, the prosecution does not have to include a negative averment of the matter of the exception in the information, unless the 'matter enters into and becomes a material part of the description of the offense.'" *State v. Shouse*, 8 Kan. App. 2d 483, 485, 660 P.2d 970 (1983).

In *State v. Brothers*, 212 Kan. 187, 189-90, 510 P.2d 608 (1973), our Supreme Court listed prior Kansas cases which have adhered to this rule. See *State v. Braun*, 209 Kan. 181, 189-90, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972) (accused has burden of proving that he or she is within exception or exemption so long as exception or exemption is not part of the description of the offense); *State v. Perello*, 102 Kan. 695, 171 Pac. 630 (1918) (where unlawful to possess intoxicating liquor except for druggists or pharmacists, State not required to allege that defendant was not a druggist or pharmacist).

In *State v. Jamieson*, 206 Kan. 491, 492, 480 P.2d 87 (1971), the Kansas Supreme Court considered a similar question with respect to the following language from our abortion statute:

"'Every physician or other person who shall willfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any instrument or means whatsoever, with intent thereby to procure abortion or the miscarriage of any such woman, *unless the same shall have been necessary to preserve the life of such woman* . . . shall upon conviction be adjudged guilty of a misdemeanor, and punished by imprisonment.'"

The *Jamieson* court ruled that the exception set forth in the Kansas abortion statute had to be negatively averred and proven because the exception constituted an integral part of the offense defined by that statute. 206 Kan. at 495.

The present case is more similar to the *Shouse* line of cases than to *Jamieson*. The subject crime in the instant case is criminal possession of a firearm. If a person possessing a gun on school property is a police officer, that officer is excepted from prosecution. A person's lack of police officer status is not integral to

the operation of this statute. If the perpetrator is a police officer, he or she is in the best position to prove this status. Requiring a defendant to demonstrate that he or she is a police officer brings the exception into play only in cases where it is a bona fide issue. Requiring potential perpetrators to prove their status as police officers is consistent with Kansas case law and public policy, and it promotes judicial efficiency. The trial court did not err in denying Bennett's motion for a judgment of acquittal.

The unlawful possession of a firearm statute provides for an exception to its prohibition on gun possession when the firearm is "secured in a motor vehicle by a parent, guardian, custodian or someone authorized to act in such person's behalf who is delivering or collecting a student." K.S.A. 1992 Supp. 21-4204(3)(c). Bennett contends that, because Wolfe's mother directed him to collect Wolfe, the statutory exception applies and he could not be found guilty of unlawful possession of a firearm under the circumstances.

The State maintains the exception is inapplicable under the case law and reasoning cited above. However, those cases merely relieve the State from having to prove that an exception is inapplicable to a defendant; the cases require the defendant to raise the exception as an affirmative defense. Bennett presented evidence to show that Wolfe's mother gave him authorization to retrieve her son from school. Resolution of this issue centers on an interpretation of the exception. Statutory interpretation is a question of law, *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993), over which this court's review is unlimited. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The trial court held that Bennett's authorization from Wolfe's mother was insufficient as a matter of law. The trial court concluded that for the exception to apply, Bennett would need authority not only to deliver or collect a student, but to act as a parent, custodian, or guardian.

This court has not previously interpreted K.S.A. 1992 Supp. 21-4204(3)(c). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as ex-

pressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). Under the plain meaning approach to this statute, Bennett's position seems to have merit.

The trial court's ruling tortures the statutory language to conclude that in order for an individual to come within the exception, he or she must be authorized to act as parent, guardian, or custodian. The plain meaning of the language of the statute requires only that the individual be "someone authorized to act *in such person's behalf* who is delivering or collecting a student." (Emphasis added.) K.S.A. 1992 Supp. 21-4204(3)(c). Thus, it would seem that Bennett would come within the exception as he was on the school grounds to pick up Wolfe on the authority of Wolfe's mother.

The issue is not so easily resolved, however, as the exception also requires that the firearm be *"secured* in a motor vehicle." (Emphasis added.) K.S.A. 1992 Supp. 21-4204(3)(c). The statute does not define this phrase.

When ascertainable, intent of the legislature governs judicial interpretation of statutes, and the courts should give words in common usage their natural and ordinary meanings. *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 682, 847 P.2d 1292 (1993). The verb secure means "to make fast: tie down: SEAL." Webster's Third New International Dictionary 2052 (1986). "[P]ossession of a firearm secured in a motor vehicle," K.S.A. 1992 Supp. 21-4204, connotes a more restricted possession than if the statute were to read "possession of a firearm inside a vehicle." The language suggests that the legislature intended greater effort by the possessor of the firearm to ensure that it would remain in the vehicle in a safe condition before an individual would be construed to be within the exception.

Although Kansas appellate courts have not interpreted K.S.A. 1992 Supp. 21-4204(3)(c), Iowa prohibits persons from "knowingly carr[ying] or otherwise transport[ing] in a vehicle a pistol or revolver." *State v. Jones*, 524 N.W.2d 172, 173 (Iowa 1994). In *Jones*, the Iowa Supreme Court construed a statutory exception for "[a] person who for any lawful purpose carries or transports

an unloaded pistol or revolver in a vehicle inside a closed and fastened container." 524 N.W.2d at 173. The *Jones* court concluded that the defendant, who had been arrested for carrying his handgun in a zippered pouch, fell within the exception and was, therefore, exempt from the prohibition. 524 N.W.2d at 173-75.

Maryland's prohibition against carrying handguns on school property does not have an exception like K.S.A. 1992 Supp. 21-4204(3)(c). See Md. Crimes and Punishments Code Ann. § 36A (1992). However, in its provision on the prohibition of transporting firearms, the Maryland Legislature has enumerated certain exceptions when an owner of firearms is traveling to and from specified locations. Under these exceptions, at all times the "handgun shall be unloaded and carried in an enclosed case or enclosed holster." Md. Crimes and Punishments Code Ann. § 36B(c)(3). See *Jordan v. State*, 24 Md. App. 267, 274, 330 A.2d 496 (1975) (while statutory language does not necessarily require transportation of the firearm in a customary gun case, it does require more than an unfastened sack).

The Florida statute is somewhat more analogous to our statute. It provides: "[I]t is lawful for the following persons to own, possess, and lawfully use firearms and other weapons, ammunition, and supplies for lawful purposes: . . . A person traveling by private conveyance when the weapon is securely encased." Fla. Stat. § 790.25(3)(l) (1994 Supp.). The Florida appellate courts have interpreted this provision on numerous occasions. See *State v. Hanigan*, 312 So. 2d 785, 786, 788 (Fla. Dist. App. 1975) (exception where defendant had revolver in holster with a leather strap snapped over the hammer and gun was underneath driver's seat); *Cates v. State*, 408 So. 2d 797, 798-99 (Fla. Dist. App. 1982) (guilty verdict for carrying concealed weapon upheld where handgun was kept in the console compartment between front seats and officers had testified that the lid was unlocked and left partially open); *State v. Swoveland*, 413 So. 2d 166, 167 (Fla. Dist. App. 1982) (dismissal of complaint reversed; question of fact existed whether leather strap of holster was snapped across the hammer, and it was improper for court to exempt defendant under *Hanigan* as a matter of law).

Faced with the difficulty of precisely defining the term "securely encased" the Florida courts implored the legislature to define the term. In its 1982 session, the legislature added a definition. Fla. Stat. § 790.001(16) (1993); see also *Alexander v. State*, 477 So. 2d 557-58 (Fla. 1985) (applying new definition).

Two other states have statutory exceptions to general prohibitions on the transportation of firearms. See Cal. Penal Code § 12026.2 (a) and (d) (West 1992) (providing for certain exceptions for prohibition on transportation of guns, provided the firearm is kept in a "locked container," *i.e.*, "a secure container which is fully enclosed and locked by a padlock, key lock, combination lock, or similar locking device"); and Mich. Comp. Laws § 750.231a (1991) (person meeting various exceptions to prohibition on carrying/transportation of firearm must still carry firearm in wrap or a container which is in the trunk or otherwise not readily accessible). Neither of these statutes has been construed by the courts of those states.

Obviously, the statutes discussed above are distinguishable from the Kansas statute subject to this appeal. However, the cases and statutes do establish a pattern among the states whereby individuals are permitted to carry their firearms only where the possession of them is somehow restricted to minimize the dangers of transportation. The Kansas Legislature has outlined certain narrow exceptions to the general prohibition against carrying firearms on school grounds. In each of the out-of-state examples, the primary purpose behind authorizing certain persons to carry firearms seems to be to permit their safe transportation. It is reasonable to expect individuals transporting a firearm to sacrifice certain aspects of the firearm's immediate use, *i.e.*, place it in a zippered pouch, or in a strapped holster under the seat, etc. Keeping the guns encased or enclosed ensures that their transportation is permitted without encouraging immediate use.

In our situation, if the true purpose of an individual (parent, guardian, or designee) is to pick up a student from a school function, then it is not unreasonable for the person to have his or her firearm "secured" in a gun rack, gun case, locked trunk, or something of that nature. The less secured the weapon (for example,

if the gun is out on the seat or on the dashboard) the more likely that weapon is carried for the purpose of protection or intimidation. This the legislature absolutely intends to proscribe.

Reading the exception to permit the carrying of a handgun on school property as long as it is inside a motor vehicle would also seem to undermine the purpose of the prohibition of carrying a concealed weapon. See K.S.A. 21-4201(1)(d) ("Unlawful use of weapons is knowingly . . . carrying any pistol, revolver or other firearm concealed on one's person except when on the person's land or in the person's abode or fixed place of business"). In *State v. Chiles*, 226 Kan. 140, 142-43, 595 P.2d 1130 (1979), our Supreme Court stated that the prohibition against carrying concealed weapons is "aimed at keeping the public from going about secretly armed. . . . If a man knows another man is armed he would behave differently in the event of an affray than if he did not."

The legislature has acknowledged that there is greater need to deter individuals from carrying guns onto school property than in other public places. If the gun were placed on the seat of a vehicle, it would seemingly fall outside the concealed weapons prohibition, which applies only if the gun is on one's person. K.S.A. 1992 Supp. 21-4204 seems slightly broader, because it restricts possession and not merely carrying weapons on the person. In reading these sections together, the legislature's use of the phrase *"secured in a motor vehicle"* is significant because it defines a limited type of possession which is excepted from the general proscription from carrying firearms on school grounds. In the other provisions of K.S.A. 1992 Supp. 21-4204, the legislature refers merely to possession generally.

Legislative research seems to corroborate this court's understanding of the impetus behind the legislature's enactment of the exception. The language at issue was added in 1991. However, early versions of the statute (HB 2365) were introduced to the House Judiciary Committee without an exception for "a firearm secured in a motor vehicle." The legislative library contains letters in favor of amendments to the bill as first introduced. Included is a letter from the Kansas Peace Officers' Association (KPOA)

in which the members express concern over the scope of the bill's prohibition. In that letter, the KPOA specifically inquires of the legislature, "What is the definition of possession [?] Would this include firearms in a vehicle? On a gunrack? Or does the firearm need to be on the person?" Thereafter, certain amendments were considered, and, ultimately, the bill was passed almost exactly as it appears in our statutes.

It seems clear that the amendment was enacted as a response to specific inquiries made by members of the public. Reading the statutory language in light of those inquiries and public concerns clarifies the intent of the legislature. While other language might more clearly specify the type of possession which is authorized under the exception, greater specificity is not required. The language of the Florida statute, "securely encased," is more easily understood. However, even with that language, Florida courts have struggled over a precise definition. More importantly, such language might be seen to preclude one of the very situations which the bill was seemingly designed to permit, the transportation of a firearm in a gunrack. Use of language which encompasses a broad range of activities or situations inherently sacrifices clarity. While the term secured may be subject to multiple interpretations, when considered in light of the legislative history and the case law cited above, it seems clear that it was utilized to connote something more than mere presence of a firearm in a vehicle. We must conclude that as a matter of law, a gun which is left sitting open and accessible, as on the dashboard or seat of a car, is not "secured inside a motor vehicle" so as to come within the statutory exception.

Affirmed.