NOT DESIGNATED FOR PUBLICATION

No. 122,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN M. THOMPSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 10, 2021. Reversed and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: While Deputy Mikel Bohringer parked alongside the road at night, Brian M. Thompson passed him in the adjacent lane. The deputy claimed his emergency lights were activated when Thompson passed him. The deputy pulled Thompson over for failure to yield to an emergency vehicle, found drugs in his vehicle, and arrested him.

Thompson moved to suppress the drug evidence, based on his assertion that the deputy's emergency lights were not activated when Thompson passed. The district court granted the motion, but another panel of this court reversed that decision and remanded

1

the matter to the district court. On remand, Thompson renewed his motion after discovering the video of the traffic stop just before Thompson's traffic stop contained a 360-degree view which showed the deputy de-activated his emergency lights after the stop. In denying the motion, the district court mistakenly found it could not consider this new information based on this court's mandate after the first appeal. The district court also denied the motion because Thompson did not file a new motion to suppress on remand, which the district court found was required by K.S.A. 22-3216(3). The district court misinterpreted the mandate and statutory requirements, so we reverse and remand for the district court to re-entertain Thompson's motion to suppress, given the 360-degree camera view in Defendant's Exhibit A.

FACTS

The State charged Thompson with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia in January 2018. Deputy Bohringer found the drugs and paraphernalia after stopping Thompson for failing to yield to an emergency vehicle pursuant to K.S.A. 2017 Supp. 8-1530. This statute provided in relevant part:

> "(b) The driver of a motor vehicle upon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is making use of visual signals meeting the requirements of K.S.A. 8-1720, and amendments thereto, or subsection (d) of K.S.A. 8-1722, and amendments thereto, shall do either of the following:
>
> (1) If the driver of the motor vehicle is traveling on a highway that consists of at least two lanes that carry traffic in the same direction of travel as that of the driver's motor vehicle, the driver shall proceed with due caution and, if possible and with due regard to the road, weather and traffic conditions, shall change lanes into a lane that is not adjacent to that of the stationary authorized emergency vehicle; or
>
> (2) if the driver is not traveling on a highway of a type described in paragraph (1), or if the driver is traveling on a highway of that type but it is not possible to change

2

lanes or if to do so would be unsafe, the driver shall proceed with due caution, reduce the speed of the motor vehicle and maintain a safe speed for the road, weather and traffic conditions." K.S.A. 2017 Supp. 8-1530.

The visual signals set forth in K.S.A. 2017 Supp. 8-1720 are as follows:

"(a) Except as provided in subsection (b), every authorized emergency vehicle, in addition to any other equipment required by this act, shall be equipped with signal lamps mounted as high and as widely spaced laterally as practicable, which shall be capable of displaying to the front two alternately flashing red lights located at the same level and to the rear two alternately flashing red lights located at the same level, or in lieu thereof, any such authorized emergency vehicle shall be equipped with at least one rotating or oscillating light, which shall be mounted as high as practicable on such vehicle and which shall display to the front and rear of such vehicle a flashing red light or alternate flashes of red and white lights or red and blue lights in combination. All lights required or authorized by this subsection shall have sufficient intensity to be visible at 500 feet in normal sunlight. Every authorized emergency vehicle may, but need not, be equipped with head lamps which alternately flash or simultaneously flash.

"(b) A police vehicle when used as an authorized emergency vehicle may, but need not, be equipped with:

(1) Head lamps which alternately flash or simultaneously flash;

(2) flashing lights specified in subsection (a), but any flashing lights, used on a police vehicle, other than the flashing lights specified in K.S.A. 8-1722, and amendments thereto, rotating or oscillating lights or alternately flashing head lamps or simultaneously flashing head lamps, shall be red in color; or

(3) rotating or oscillating lights, which may display a flashing red light or alternate flashes of red and blue lights in combination."

Before trial, Thompson moved to suppress the drug evidence, arguing Deputy Bohringer did not have reasonable suspicion that he violated K.S.A. 2017 Supp. 8-1530. According to Thompson, he passed Bohringer around 2:18 a.m. in South Hutchinson, Kansas. The area was dark with no illuminating lights. Thompson alleged that "[a] review

3

of the video from Deputy Bohringer's patrol vehicle of the traffic stop prior to him pulling over Mr. Thompson clearly shows that Deputy Bohringer was back in his patrol car and turned off his emergency lights prior to Mr. Thompson's vehicle driving past Deputy Bohringer." Because the emergency lights on the deputy's patrol vehicle were not activated when Thompson drove past, Thompson argued he had no basis to initiate the traffic stop.

Deputy Bohringer and Thompson both testified at the hearing on Thompson's motion. Bohringer testified his patrol vehicle was a Ford Explorer SUV with a light bar on the top of the vehicle and several lights around the vehicle. The lights in the front and back of the vehicle flashed red and blue. He testified he had his top light bar activated as well as two to four lights on his bumper while conducting the traffic stop. After concluding the traffic stop and returning to his patrol vehicle, he testified that he "turned [his] sequence of lights to just where the rear lights were activated." He explained this included red and blue blinking lights in his taillights and in the back portion of the light bar on top of his patrol vehicle. The front portion of the light bar was not activated.

Deputy Bohringer testified Thompson drove past him so closely that it shook his patrol vehicle. They were on a four-lane road with two northbound and two southbound lanes. About one-third or one-half of the deputy's patrol vehicle protruded into the easternmost lane. Thompson was driving in that lane as he approached Bohringer. As Thompson passed Bohringer, he only moved his vehicle six inches left of the white dotted centerline of the road, leaving about 95 percent of his vehicle in the deputy's lane. Bohringer initiated a traffic stop of Thompson for failing to yield to an emergency vehicle. After stopping Thompson, Bohringer discovered drugs and drug paraphernalia.

A copy of Deputy Bohringer's dash camera footage, which covered the time between initiating the first traffic stop and changing the active emergency lights on his car, was introduced into evidence. The camera captured what happened in front of the

4

deputy's vehicle but not behind it. Blue and red flashing lights were visible during Bohringer's stop of the motorist. Once Bohringer returned to his vehicle and changed the lights, the red and blue flashes were no longer visible in the front camera view. Bohringer admitted that no red and blue flashing lights were visible in his dash camera footage but explained they simply were not visible from the front of the video despite it being "pitch black outside."

Thompson testified that he saw Deputy Bohringer's patrol car as he approached it from behind, but there were no red and blue lights activated on the vehicle.

In closing argument, Thompson's counsel argued the video showed the blue and red lights stopped blinking before Thompson passed Deputy Bohringer. Defense counsel stated:

> "Apparently it's the State's argument that the blue and red lights from behind the vehicle was still flashing. That just does not prove to be true in the video. It could be Deputy Bohringer was mistaken but it's pitch black on the side of that road. You could see red and blue lights flashing if they were in fact flashing."

The district court later granted the motion, after taking it under advisement. The court found that Deputy Bohringer's rear emergency lights were activated. Even so, it held: "The officer testified he felt his vehicle shake as defendant passed. This fact alone does not support a finding of reasonable suspicion of violation of the law. Traffic conditions, road conditions and speed all enter into a determination of whether a violation of K.S.A. 8-1530 has occurred." The State filed an interlocutory appeal.

A panel of this court reversed the district court's decision. *State v. Thompson*, No. 120,323, 2019 WL 3977964 (Kan. App. 2019) (unpublished opinion). On appeal, Thompson argued "the district court found his testimony more credible—that he saw no

emergency lights flashing when approaching the officer's stopped patrol vehicle—over Officer Bohringer's testimony that he thought he left the rear emergency lights on." 2019 WL 3977964, at *3. This court rejected that argument, noting the district court found Deputy Bohringer's rear emergency lights were activated. 2019 WL 3977964, at *4. Thus, "[t]he district court did not base its ruling on whether Thompson could see the emergency lights or whether Officer Bohringer did not have his emergency lights turned on." 2019 WL 3977964, at *4. Rather, the district court's ruling stemmed from its belief that Bohringer's testimony failed to articulate reasonable suspicion that Thompson did not exercise due caution when passing Bohringer as required by K.S.A. 2017 Supp. 8-1530(b). This court reversed the district court after finding that, under the "totality of the circumstances, there was sufficient evidence to establish a reasonable suspicion that Thompson violated K.S.A. 8-1530(b)." 2019 WL 3977964, at *7. The court explained:

> "The district court emphasized the fact that when Thompson passed the officer's patrol vehicle the movement did not prove a violation of K.S.A. 8-1530. That may be true, but the issue to be determined is not whether a violation of K.S.A. 8-1530(b) occurred but whether there was a reasonable suspicion that a violation of K.S.A. 8-1530(b) occurred. The fact that the stopped patrol vehicle moved when Thompson passed it is not the critical issue. The issue is the proximity of Thompson's vehicle to the patrol vehicle that would cause the stopped patrol vehicle to move when Thompson passed. Officer Bohringer testified that a semitruck that was some distance from another vehicle could make that vehicle move but that a passenger vehicle would not. A passenger vehicle would have to be close to cause another passenger vehicle to move and in particular to move it as much as Officer Bohringer described in this case. Clearly an indication that Thompson was in the same lane as the stopped patrol vehicle. The movement of the vehicle was not the only observation Officer Bohringer relied in deciding to stop Thompson. Officer Bohringer testified that he observed that 95% of Thompson's vehicle was in the same lane as the patrol vehicle.
>
> "The district court also stated that there was no evidence as to the road, weather, and traffic conditions or the speed of Thompson's vehicle which would 'all enter into whether a violation of K.S.A. 8-1530 has occurred.' That may be true in determining whether a violation of K.S.A. 8-1530(b) occurred and those factors might ultimately

6

determine guilt or innocence. But those factors are not necessary as a prerequisite to determine whether reasonable suspicion existed. Additionally, Officer Bohringer tangentially gave evidence on those factors. He testified that Thompson moved six inches into the left lane. This is evidence that Thompson was not blocked by traffic from moving into the left lane." 2019 WL 3977964, at *7-8.

This court concluded: "We reverse the district court's order of suppression and remand the case for further proceedings." 2019 WL 3977964, at *8. This court issued its mandate in September 2019.

The case proceeded to a bench trial in February 2020. At the beginning of the trial, defense counsel stated she believed "that the evidence that will be shown during the bench trial . . . would warrant Mr. Thompson renewing his motion to suppress."

Deputy Bohringer was the only trial witness. His testimony on direct examination focused on the events that occurred after he stopped Thompson. During cross-examination, the defense introduced the video of the traffic stop Bohringer made before stopping Thompson as Defendant's Exhibit A. The district court admitted the exhibit over the State's objection.

During closing arguments, Thompson renewed his motion to suppress. Defense counsel noted that Defendant's Exhibit A provided an option to view the video in a 360-degree mode, meaning the viewer can see all angles from the recording device in the patrol vehicle. Playing the video in the 360-degree mode showed Deputy Bohringer turned off his emergency lights after returning to his vehicle after the first traffic stop. Defense counsel asked the district court to grant the motion to suppress because "[i]n order for Mr. Thompson to have a duty to yield to that emergency vehicle the lights must have been activated and clearly they were not."

7

The State responded by arguing that "[i]f the Court is going to take the opportunity to view this video, this is essentially the Defense presenting new evidence." The State asked for the opportunity to call Deputy Bohringer for rebuttal to ask for his perspective on the video because the State's attorney claimed he had never seen the video. Defense counsel responded: "Judge, this is the view—this is what I got from the State. The State didn't look any further. The State has rested. There's no rebuttal. The piece of evidence was offered and it was admitted." The district court found that defense counsel was "past the point of rebuttal" but asked counsel if she had any other statements. Defense counsel added that the district court's initial ruling on the motion to suppress, finding that the deputy's rear emergency lights were activated, depended on an error of fact which is why the defense renewed its motion to suppress. The district court took the issue under advisement.

Soon after, the district court denied the renewed motion, ruling in relevant part:

> "The Court of Appeals of the State of Kansas has directed this court to deny defendant's motion to suppress. Defendant's right to renew his motion to suppress is limited by K.S.A. 22-3216(3). The defendant has failed to show that he did not have an opportunity to bring such motion or that he was not aware of the ground for the motion."

The district court found Thompson guilty as charged. The district court sentenced Thompson to 18 months' probation with underlying concurrent sentences of 11 months' imprisonment for possession of methamphetamine, 6 months in jail for possession of marijuana, and 6 months in jail for possession of drug paraphernalia.

ANALYSIS

On appeal, Thompson challenges the limitations the district court imposed on its ability to consider Thompson's motion to suppress, given the new evidence presented in Defendant's Exhibit A. Thompson argues the district court wrongly viewed the appellate

court mandate to restrict its ability to consider this evidence and improperly interpreted K.S.A. 22-3216 to require another written pretrial motion to suppress. We agree with Thompson.

*Preservation of Thompson's objection*

Before we get to the merits, the State argues Thompson failed to preserve his motion to suppress because he did not contemporaneously object to the admission of the evidence he sought to suppress. Generally, when the district court has denied a pretrial motion to suppress, the moving party must still object to the introduction of that evidence when offered at trial to preserve the issue for appeal. *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012); see K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."). The rule gives the district court an opportunity to conduct a trial without using tainted evidence. 295 Kan. at 589. "[A] pretrial objection by itself is not timely because the evidence may be different from that submitted at the pretrial hearing or the evidence may be viewed differently by the judge in the context of all of the evidence and argument heard at trial." 295 Kan. at 590.

Although the Kansas Supreme Court has stated that evidentiary claims "must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal," it has also agreed to consider such claims without a contemporaneous objection at times. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). Relevant here is *State v. Gordon*, 219 Kan. 643, 549 P.2d 886 (1976), *superseded by statute on other grounds as stated in State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001), where the court held that an objection made in a posttrial brief after a bench trial was timely because "under the circumstances of [the] case the spirit if not the letter of the contemporaneous objection

9

rule was satisfied." 219 Kan. at 652. The court acknowledged that "the appellant's objection was not 'timely' in the strict sense, but there [was] no doubt the district court was apprised of the issue before it rendered its decision." 219 Kan. at 652. Notable to the court was the fact that the trial was a bench trial and "no jurors had been swayed by the improper evidence." 219 Kan. at 652. When the court conducts a bench trial rather than a jury trial, Kansas courts "indulge in the presumption that the district court, in reaching its final decision, considered only evidence which was properly admissible unless the contrary is shown by the record." 219 Kan. at 652. The Kansas Supreme Court reaffirmed these principles in *Kelly*. See 295 Kan. at 593.

Here, defense counsel did not object when the State introduced evidence at trial which was the subject of Thompson's pretrial motion to suppress. It was not until closing argument, after the State rested its case, that Thompson's attorney renewed the motion to suppress. Part of the problem is that the evidence supporting the motion—Deputy Bohringer's dash camera footage of the traffic stop before Thompson's traffic stop (Defendant's Exhibit A)—was not in evidence until Bohringer's cross-examination. Here, like in *Gordon*, the district court was aware of Thompson's objection before it ruled on his motion and it mentioned that objection in its final decision. At trial, the district court said that it had a "renewed motion to suppress and the State's case to consider." The objection here was raised earlier than the objection in *Gordon*, which makes Thompson's argument that the issue is preserved even more persuasive. We find Thompson has preserved the issue for our review.

*District court's interpretation of the appellate mandate*

When ruling on Thompson's renewed motion to suppress, the district court said this court directed it to deny the motion. Thompson argues this characterization was error since the Kansas Supreme Court has "recognized the district court's ability to reevaluate a holding from a higher court when additional evidence surfaces during the proceeding."

"Interpretation of an appellate court mandate and the determination of whether the district court complied with it on remand are both questions of law subject to de novo review." *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014).

The Kansas Supreme Court has held the mandate rule, codified at K.S.A. 20-108, does not "explicitly or even implicitly deprive[] a district court of its jurisdiction to address an entirely new issue that surfaces in a case as a result of events that occur after a mandate issues." *State v. Soto*, 310 Kan. 242, 252, 445 P.3d 1161 (2019). Nor does it "eliminate the district court's ability to address any matter left undecided by the issuance of the appellate mandate." 310 Kan. at 253. The *Soto* court then explained the rule and cited several relevant cases.

> "The rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case. Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings. See *State v. Morton*, 283 Kan. 464, 471-74, 153 P.3d 532 (2007) (district court presiding over retrial pursuant to appellate mandate permitted to reconsider motion in limine ruling never contested in appeal). They may include issues arising from late-breaking facts. See *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150, 152-53, 1 P. 69 (1883) (differentiating issues within mandate, those without; 'matters arising subsequent to' appellate decision may be considered on remand; discretion to do something for the parties not covered by the mandate can be exercised 'only upon the presentation of new facts'); see also *Jones v. Smith*, 5 Kan. App. 2d 352, 354, 616 P.2d 300 (1980) (K.S.A. 60-2106[c] permits district judge to take up motion for relief from judgment filed after a mandate issued in earlier appeal) (quoting *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18, 97 S. Ct. 31,

50 L. Ed. 2d 21 [1976]) (appellate mandate relates to record, issues then before court; mandate does not purport to deal with possible later events)." 310 Kan. at 256.

The district court's decision on this issue was not supported by the language of the mandate. This court reversed the district court's order of suppression and remanded the case for further proceedings. *Thompson*, 2019 WL 3977964, at *8. This court's ruling was based on the evidence presented at the suppression hearing and did not address the evidence later introduced at trial, including the 360-degree camera view in Defendant's Exhibit A. The mandate rule did not prevent the district court from considering the issue anew given the new information garnered from the evidence.

The State argues that the doctrine of res judicata precludes Thompson from renewing his motion to suppress. "Res judicata (claim preclusion) prevents relitigation of previously litigated claims and consist of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits." *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274 (2002). The State's argument is unavailing because "[t]he doctrine of res judicata does not apply to a second appeal within the same case—that is, to an appeal from proceedings occurring on remand from a prior appeal." *State v. Kleypas*, 305 Kan. 224, Syl. ¶ 1, 382 P.3d 373 (2016).

The State also argues the law of the case doctrine barred Thompson from renewing his motion to suppress at trial. Unlike res judicata, the law of the case doctrine does apply to a second appeal in the same case. *Kleypas*, 305 Kan. at 244. This doctrine provides that "[w]hen a second appeal is brought to this court in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions." *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998). Even so, the doctrine "is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which

12

expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so." 263 Kan. 629, Syl. ¶ 2. Courts generally recognize three exceptions that allow changing the law of the case, which "apply when (1) a subsequent trial produces substantially different evidence, (2) a controlling authority has made a contrary decision regarding the law applicable to the issues, or (3) the prior decision was clearly erroneous and would work a manifest injustice." *Kleypas*, 305 Kan. at 245. A party need not show exceptional circumstances to meet a law of the case exception. 305 Kan. at 250.

Here, the law of the case doctrine does not preclude Thompson's argument since this court's decision on appeal turned on the facts known to the district court at the time of its ruling. When Thompson renewed the motion to suppress, he did so based on the development of new information about the evidence. This court's decision on appeal did not address that new information. Nor did Thompson challenge the law applicable to his case. Rather, he asked the district court to reconsider its factual findings, based on this new information.

The State compares this case to *State v. Parry*, 51 Kan. App. 2d 928, 358 P.3d 101 (2015), *aff'd* 305 Kan. 1189, 390 P.3d 879 (2017). There, the district court granted Dominic Parry's motion to suppress evidence and this court affirmed following the State's interlocutory appeal. 51 Kan. App. 2d at 928-29. The State dismissed and refiled the charges against Parry. Parry filed another motion to suppress, but this time the State made different arguments in response. The district court granted Parry's motion, and the State appealed. 51 Kan. App. 2d at 930. The State admitted the goal of its dismissal maneuver was to get a second chance to argue the merits of the motion to suppress, using arguments that it failed to raise during the first hearing. This court refused to allow the State a "second bite at the apple" to again argue the issue. 51 Kan. App. 2d at 929.

*Parry* is distinguishable because it did not involve new evidence that could have caused the district court to reconsider the factual findings underpinning its decision. And Thompson made the same arguments in his pretrial motion to suppress as he did at trial: that Deputy Bohringer turned off his emergency lights before Thompson passed him. This differs from the State's approach in *Parry*, where it made new arguments in response to the second motion to dismiss.

The law of the case doctrine is not intended to prevent courts from correcting previous errors. See *Kleypas*, 305 Kan. at 250 ("[L]ongstanding Kansas precedent indicates a court should correct errors while the parties are still before it if an exception to the law of the case doctrine applies."). The State's position that a motion to suppress should not be reconsidered upon presentation of additional evidence conflicts with the intent of the doctrine.

*District court's interpretation of K.S.A. 22-3216*

When denying Thompson's renewed motion to suppress the district court also held: "Defendant's right to renew his motion to suppress is limited by K.S.A. 22-3216(3). The defendant has failed to show that he did not have an opportunity to bring such motion or that he was not aware of the ground for the motion." K.S.A. 22-3216 provides in part:

> "(1) Prior to the trial a defendant aggrieved by an unlawful search and seizure may move for the return of property and to suppress as evidence anything so obtained.
> "(2) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful. The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were lawful shall be on the prosecution. If the motion is granted then at the final conclusion of the case, the court shall order the suppressed evidence restored to the party entitled thereto, unless it is otherwise subject to lawful detention.

14

"(3) The motion shall be made before trial, in the court having jurisdiction to try the case, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the trial."

The district court's findings suggest that it believed Thompson did not file a proper motion to suppress the evidence before trial. Thompson argues that he "did file a pretrial motion to suppress in this case, specifically referring to [the] video of the initial stop, so K.S.A. 22-3216(3) was not operative in this case." Alternatively, he argues that "the district court had discretion to consider the defense argument even if no pretrial motion was filed."

Whether Thompson's pretrial motion to suppress satisfied the written motion requirement of K.S.A. 22-3216 involves statutory interpretation. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Thompson filed a pretrial motion to suppress which stated "facts showing wherein the search and seizure were unlawful" as required by K.S.A. 22-3216(2). He argued in this motion that "[a] review of the video from Deputy Bohringer's patrol vehicle of the traffic stop prior to him pulling over Mr. Thompson clearly shows that Deputy Bohringer was back in his patrol car and turned off his emergency lights prior to Mr. Thompson's vehicle driving past Deputy Bohringer." The district court received evidence at the suppression hearing and made the factual finding that the deputy's lights were activated. The issue here is whether Thompson needed to file a second motion to suppress when he discovered the other information available from Bohringer's dash camera footage— notably the 360-degree camera view.

15

Thompson maintained the same grounds for his motion to suppress before and during trial: Deputy Bohringer's dash camera showed that his emergency lights were off. The same video was shown at both the motion to suppress hearing and trial. There was not new evidence presented at trial insomuch as there was a new method of viewing the evidence. Both the district court and the State were fully aware of the legal and factual basis Thompson argued in support of suppression. Under these unique circumstances, the district court should have found Thompson's pretrial motion to suppress sufficient under K.S.A. 22-3216.

The plain language of K.S.A. 22-3216 supports this conclusion. The statute does not require the moving party to list every piece of evidence supporting the factual assertions in the motion. Instead, it distinguishes between factual assertions and evidence by stating that "[t]he judge shall receive evidence on any issue of fact necessary to determine the motion." K.S.A. 22-3216(2). Further, the Kansas Supreme Court has stated:

> "Normally, and [K.S.A. 22-3216(3)] so contemplates, the motion, when made before trial, will be heard once and disposed of; however, if at trial new or additional evidence is produced bearing on the issue or substantially affecting the credibility of the evidence adduced at the pretrial hearing of the motion, we believe the statute authorizes reentertainment of the motion in the court's discretion." *State v. Jackson*, 213 Kan. 219, 226, 515 P.2d 1108 (1973).

See also *State v. Riedel*, 242 Kan. 834, 837, 752 P.2d 115 (1988) (clarifying that "'new or additional evidence'" is not required "on every occasion that a trial judge reconsiders an earlier order entered at a pretrial motion hearing"). If new or other evidence is produced at trial, then it would not have been included in a pretrial motion to suppress. This specificity is not required to satisfy the pretrial motion to suppress requirement of K.S.A. 22-3216(3). Here, the 360-degree camera view substantially affects the credibility of the evidence the district court relied on in ruling that Deputy Bohringer's emergency lights

16

were activated when Thompson passed him. This evidence fits squarely within the reasoning in *Jackson*, and the district court should have exercised its discretion in determining whether to consider the renewed motion.

The district court erred when it held that K.S.A. 22-3216(3) precluded its consideration of Thompson's renewed motion to suppress. Because Thompson filed a pretrial motion to suppress, K.S.A. 22-3216(3) authorized the district court to entertain the renewed motion. To interpret the statute "otherwise would be to proscribe correction of . . . error by the trial court at trial or even on motion for a new trial." *Jackson*, 213 Kan. at 226.

The district court abused its discretion in failing to consider the renewed motion because of its legally erroneous belief that Thompson did not file a pretrial motion to suppress:

> "It is an abuse of discretion for a district court to adopt a pretrial ruling that disposes of a discretionary determination automatically, without analyzing the factors that would enter into the discretionary decision; *i.e.*, it is an abuse of discretion to refuse to exercise discretion or fail to appreciate the existence of the discretion to be exercised in the first instance." *State v. Stewart*, 306 Kan. 237, Syl. ¶ 5, 393 P.3d 1031 (2017).

This concept also reflects the preservation rules discussed above.

> "If a contemporaneous trial objection to a pretrial ruling is deemed necessary to avoid the reversible admission of tainted evidence, [then] a corollary to the rule would logically require the trial judge's informed decision on the merits of the objection. Otherwise, without an actual reconsideration of the pretrial ruling, the contemporaneous objection rule would not accomplish our stated purpose." 306 Kan. at 264.

17

*District court's errors were not harmless*

Since we find the district court's holdings on both the mandate rule and K.S.A. 22-3216(3) were in error, we must determine whether those errors were harmless. See K.S.A. 2020 Supp. 60-261 (stating that unless justice requires otherwise, no error in admitting evidence is ground for disturbing judgment or order unless error affects party's substantial rights). When, as here, the issue arises under the Fourth Amendment to the United States Constitution, this court "must apply the constitutional harmless error standard defined in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." *Kleypas*, 305 Kan. at 257.

Under that standard, an error is harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011). The State cannot meet this burden.

Two cases, *State v. Wickliffe*, 16 Kan. App. 2d 424, 826 P.2d 522 (1992), and *State v. Bennett*, 20 Kan. App. 2d 767, 892 P.2d 522 (1995), establish this point. In *Wickliffe*, the defendant moved to suppress evidence at trial. He had not filed a written motion before trial but asserted he did not know the grounds for the motion before trial. The district court denied the motion to suppress on the grounds that it was required to be filed in writing before trial. 16 Kan. App. 2d at 428. This court held the district court abused its discretion by "summarily dismiss[ing] the motion without exercising its discretion and evaluating whether the defendant came within the exception listed in the statute." 16 Kan. App. 2d at 428. The error was harmless, however, because the evidence subject to the motion was cumulative given the other evidence supporting the defendant's convictions. 16 Kan. App. 2d at 430-31.

In *Bennett*, the district court denied the defendant's motion to suppress because the defendant had not filed a written motion before trial. This court held that if the district court erred, it was not harmless error because if the evidence subject to the motion had been suppressed, then "the State would not have any evidence to support the conviction." 20 Kan. App. 2d at 770. That said, the court then held that the district court did not err because the defendant failed to claim that his failure to file a written pretrial motion to suppress fell under an exception to K.S.A. 22-3216(3).

This case is much like *Bennett* because the only evidence the State had to support Thompson's convictions arose from the traffic stop. The district court believed it could not entertain the renewed motion to suppress because it had not been made in writing before trial. This was error because Thompson made an adequate pretrial motion, and "[t]he decision to rehear an earlier motion is a matter which lies within the sound discretion of the trial court." *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004). The district court's failure to consider the renewed motion constituted an abuse of discretion, and the error is not harmless. The 360-degree camera view associated with the video "substantially affect[ed] the credibility of evidence adduced at pretrial hearing," and that evidence bore on a material fact. 278 Kan. 603, Syl. ¶ 7. This is precisely the kind of situation in which "K.S.A. 22-3216 authorizes reentertainment of the motion in the court's discretion." 278 Kan. 603, Syl. ¶ 7. Thus, we cannot conclude beyond a reasonable doubt that the error did not affect the outcome of the trial.

We reverse and remand for the district court to consider Thompson's renewed motion to suppress, in light of the 360-degree camera view in Defendant's Exhibit A.

Reversed and remanded with directions.